1   JEFFREY S. BUCHOLTZ
    Acting Assistant Attorney General
2   SCOTT N. SCHOOLS
    United States Attorney
3   CARL J. NICHOLS
    Deputy Assistant Attorney General
4   JOSEPH H. HUNT
    Director, Federal Programs Branch
5   VINCENT M. GARVEY
    Deputy Director, Federal Programs Branch
6   MICHAEL P. ABATE
    Trial Attorney
7   michael.abate@usdoj.gov
    U.S. Department of Justice
8   Civil Division, Federal Programs Branch
    20 Massachusetts Avenue, NW
9   Washington, DC 20001
    Phone:      (202) 616-8209
10  Fax:        (202) 616-8470
    Attorneys for the United States of America

11

12                      UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF CALIFORNIA
13                           San Jose Division

14  BINYAM MOHAMED;                    )
    ABOU ELKASSIM BRITEL;              )
15  AHMED AGIZA;                       )
    MOHAMED FARAG AHMAD                )
16  BASHMILAH;                         )
    BISHER AL-RAWI                     )
17                                     )    Case No. C-07-02798-JW
                  Plaintiffs,          )
18                                     )    NOTICE OF MOTION AND MOTION TO
             v.                        )    DISMISS, OR, IN THE ALTERNATIVE,
19                                     )    FOR SUMMARY JUDGMENT BY
                                       )    THE UNITED STATES OF AMERICA
20                                     )
    JEPPESEN DATAPLAN, INC.            )    Judge:          Hon. James Ware
21                                     )    Hearing Date:   February 4, 2008
                                       )    Hearing Time:   9:00 AM
22                                     )    Courtroom:      8, 4th Floor
                  Defendant.           )
23  _____)

24

25

26

27  Notice of Motion and Motion to Dismiss or,
    in the Alternative, for Summary Judgment
    by the United States of America
28  Case No. C-07-02798-JW

1   PLEASE TAKE NOTICE that, on February 4, 2008, before the Honorable James Ware,

2   intervenor United States of America will move, and hereby does move, to dismiss this action

3   pursuant to Rule 12 of the Federal Rules of Civil Procedure or, in the alternative, for summary

4   judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  As explained in the United

5   States' memorandum in support of this Motion, the unclassified declaration invoking the military

6   and state secrets privilege and a statutory privilege under the National Security Act, and the classified

7   declaration submitted *in camera*, *ex parte*, the United States' invocation of these privileges requires

8   dismissal of this action or, in the alternative, summary judgment against plaintiffs' claims.

9                                                    Respectfully Submitted,

10                                                   JEFFREY S. BUCHOLTZ
                                                     Acting Assistant Attorney General
11
                                                     SCOTT N. SCHOOLS
12                                                   United States Attorney

13                                                   CARL J. NICHOLS
                                                     Deputy Assistant Attorney General
14
                                                     JOSEPH H. HUNT
15                                                   Director, Federal Programs Branch

16                                                   VINCENT M. GARVEY
                                                     Deputy Director, Federal Programs Branch
17
                                                     */s/ Michael. P. Abate*
18                                                   MICHAEL P. ABATE
                                                     Trial Attorney
19                                                   michael.abate@usdoj.gov
                                                     U.S. Department of Justice
20                                                   Civil Division, Federal Programs Branch
                                                     20 Massachusetts Avenue, NW
21                                                   Washington, DC 20001
                                                     Phone:      (202) 616-8209
22                                                   Fax:        (202) 616-8470

23                                                   *Attorneys for the United States of America*

24   Dated: October 19, 2007

25

26

27   Notice of Motion and Motion to Dismiss or,
     in the Alternative, for Summary Judgment
     by the United States of America
28   Case No. C-07-02798-JW            -2-

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
SCOTT N. SCHOOLS
United States Attorney
CARL J. NICHOLS
Deputy Assistant Attorney General
JOSEPH H. HUNT
Director, Federal Programs Branch
VINCENT M. GARVEY
Deputy Director, Federal Programs Branch
MICHAEL P. ABATE
Trial Attorney
michael.abate@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20001
Phone:      (202) 616-8209
Fax:         (202) 616-8470
Attorneys for the United States of America

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
San Jose Division

| | |
|---|---|
| BINYAM MOHAMED;<br>ABOU ELKASSIM BRITEL;<br>AHMED AGIZA;<br>MOHAMED FARAG AHMAD<br>BASHMILAH;<br>BISHER AL-RAWI<br><br>                    Plaintiffs,<br><br>          v.<br><br>JEPPESEN DATAPLAN, INC.<br><br>                    Defendant. | Case No. C-07-02798-JW<br><br>MEMORANDUM OF THE UNITED<br>STATES IN SUPPORT OF MOTION TO<br>DISMISS OR, IN THE ALTERNATIVE,<br>FOR SUMMARY JUDGMENT<br><br>Hon. James Ware, District Judge |

Memorandum of the United States in Support of Motion to
Dismiss, or, in the Alternative, for Summary Judgment
Case No. C-07-02798-JW

1

## TABLE OF CONTENTS

2    INTRODUCTION ........................................................... 1

3    BACKGROUND................................................................. 3

4        I.    The Plaintiffs' Claims Against Jeppesen................................ 3

5        II.    The United States' State Secrets Privilege Assertion. ...................... 4

6    ARGUMENT................................................................... 6

7        I.    PLEADING-STAGE RESOLUTION IS APPROPRIATE WHERE
              PRIVILEGED INFORMATION IS CENTRAL TO THE CASE
8              AND IT IS CLEAR THAT THE CASE CANNOT BE LITIGATED
              WITHOUT THAT INFORMATION............................................ 6
9
              A.    The State Secrets Privilege Bars Use of Privileged
10                   Information Regardless of a Litigant's Need...................... 6

11            B.    A Court Must Afford "Utmost Deference" to the Government's
                    Predictions of the Harm that Would Result From Disclosure
12                   of State Secrets............................................... 7

13            C.    Where the State Secrets Are Central to a Case, the Case
                    Cannot Proceed ............................................... 9
14
              D.    This Case Should Be Resolved at the Pleading Stage................ 11
15
        II.    THE DCIA HAS PROPERLY ASSERTED THE STATE
16             SECRETS PRIVILEGE IN THIS CASE................................. 15

17            A.    The Declarations from the Director of the CIA Meet all
                    of the Procedural Requirements for Invoking the State
18                   Secrets Privilege.............................................. 15

19            B.    The Director Has Demonstrated That Disclosure of the
                    Information Covered By The Privilege Assertions Reasonably
20                   Could Be Expected to Cause Serious--And, In Some Instances,
                    Exceptionally Grave--Damage to the National Security and
21                   Foreign Relations of the United States. .......................... 16

22            C.    The Director's Assertion of the State Secrets and Statutory
                    Privileges Over the Information in Question is Proper,
23                   Notwithstanding the Executive Branch's Limited
                    Acknowledgment of the Existence of the CIA Terrorist
24                   Detention and Interrogation Program, and Public Speculation
                    Concerning that Program ....................................... 19
25
        III.    THE DCIA HAS PROPERLY ASSERTED A STATUTORY
26             PRIVILEGE UNDER THE NATIONAL SECURITY ACT ................ 21

27    Memorandum of the United States in Support of Motion to
      Dismiss, or, in the Alternative, for Summary Judgment
28    Case No. C-07-02798-JW

1

IV.    INFORMATION SUBJECT TO THE STATE SECRETS AND
2         STATUTORY PRIVILEGES IS CENTRAL TO THIS CASE AND,
          THUS, THIS ACTION CANNOT PROCEED . . . . . . . . . . . . . . . . . . . . . . . . 22
3
CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Memorandum of the United States in Support of Motion to
Dismiss, or, in the Alternative, for Summary Judgment
Case No. C-07-02798-JW                    -ii-

1

**TABLE OF AUTHORITIES**

2

<u>CASES</u>                                                                          <u>PAGES</u>

3

4

<u>Afshar v. Dep't of State</u>, 702 F.2d 1125 (D.C. Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

<u>American Civil Liberties Union v. NSA</u>, 493 F.3d 644 (6th Cir. 2007). . . . . . . . . . . . . . . . .   13

5

<u>Bareford v. General Dynamics Corp.</u>, 973 F.2d 1138 (5th Cir. 1992).. . . . . . . . . . . . . . . 3, 11,13

6

<u>Berman v. C.I.A.</u>, __ F. 3d __, 2007 WL 2472858 (9th Cir. 2007).. . . . . . . . . . . . . . . . . . . . .   22

7

<u>Black v. United States</u>, 62 F.3d 1115 (8th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . .   10, 13

8

<u>Bowles v. United States</u>, 950 F.2d 154 (4th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

9

<u>CIA v. Sims</u>, 471 U.S. 159 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

10

<u>Ctr. for Nat'l Security Studies v. U.S. Dep't of Justice</u>, 331 F.3d 918
     (D.C. Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

11

12

<u>El-Masri v. Tenet</u>, 437 F. Supp. 2d 530 (E.D. Va. 2006). . . . . . . . . . . . . . . . . . . 9, 10, 11, 23

13

<u>El-Masri v. United States</u>, 479 F.3d 296 (4th Cir. 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . passim

14

<u>Ellsberg v. Mitchell</u>, 709 F.2d 51 (D.C. Cir. 1983), . . . . . . . . . . . . . . . . . . . . . . . . . .   6, 7, 8, 19

15

<u>Fitzgerald v. Penthouse Intern., Ltd.</u>, 776 F.2d 1236 (4th Cir. 1985). . . . . . . . . . . . . . . . . passim

16

<u>Fitzgibbon v. CIA</u>, 911 F.2d 755 (D.C. Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20, 21

17

<u>Halkin v. Helms</u>, 598 F.2d 1 (D.C. Cir. 1978).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

18

<u>Halkin v. Helms</u>, 690 F.2d 977 (D.C. Cir. 1982).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11, 13

19

<u>Kasza v. Browner</u>, 133 F.3d 1159 (9th Cir. 1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

20

<u>Knopf v. Colby</u>, 509 F.2d 1362 (4th Cir. 1975).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

21

<u>Maxwell v. First Nat. Bank of Maryland</u>, 143 F.R.D. 590 (D. Md. 1992). . . . . . . . . . . . . . 15, 17

22

<u>Military Audit Project v. Casey</u>, 656 F.2d 724 (D.C. Cir. 1981).. . . . . . . . . . . . . . . . . . . . . . .   19

23

<u>Northrop Corp. v. McDonnell Douglas Corp.</u>, 751 F.2d 395 (D.C. Cir. 1984).. . . . . . . . . . . . .   7

24

<u>Salisbury v. United States</u>, 690 F.2d 966 (D.C. Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

25

<u>Snepp v. United States</u>, 444 U.S. 507 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

26

<u>Sterling v. Tenet</u>, 416 F.3d 338 (4th Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

27

28

Memorandum of the United States in Support of Motion to
Dismiss, or, in the Alternative, for Summary Judgment
Case No. C-07-02798-JW                        -iii-

1  <u>Tenenbaum v. Simonini</u>, 372 F.3d 776 (6th Cir. 2004).............................. 13

2  <u>Tenet v. Doe</u>, 544 U.S. 1 (2005). ................................... 11, 12, 13, 23

3  <u>Terkel v. AT & T Corp.</u>, 441 F. Supp. 2d 899 (N.D. Ill. 2006)..................... 17, 20

4  <u>Totten v. United States</u>, 92 U.S. 105 (1875). ................................... passim

5  <u>United States v. Burr</u>, 25 F. Cas. 30 (C.C.D. Va. 1807). ............................ 6

6  <u>United States v. Marchetti</u>, 466 F.2d 1309 (4th Cir. 1972). ........................... 8

7  <u>United States v. Nixon</u>, 418 U.S. 683 (1974). ................................... 6

8  <u>Weinberger v. Catholic Action of Haw./Peace Ed. Project</u>, 454 U.S. 139 (1981)......... 12, 13

9  <u>Weston v. Lockheed Missiles & Space Co.</u>, 881 F.2d 814 (9th Cir. 1989)................ 13

10  <u>Zuckerbraun v. General Dynamics Corp.</u>, 935 F.2d 544 (2d Cir. 1991). .......... 8, 13, 14, 16

11
12                                        **STATUTES**

13  50 U.S.C. §403g................................................. 21

14  50 U.S.C. § 403-1(i)(1). ........................................... 21

15  28 U.S.C. § 1350. ................................................. 3

16
17
18
19
20
21
22
23
24
25
26

27  Memorandum of the United States in Support of Motion to
Dismiss, or, in the Alternative, for Summary Judgment
28  Case No. C-07-02798-JW                    -iv-

**INTRODUCTION**

This suit, though filed against a private defendant, Jeppesen Dataplan, Inc. ("Jeppesen"), attempts to probe the most sensitive details of intelligence operations allegedly conducted by the Central Intelligence Agency ("CIA").  Plaintiffs allege that agents of the United States and particular foreign governments, with the assistance of defendant Jeppesen, subjected plaintiffs to "forced disappearance, torture, and inhumane treatment" in violation of international law, as part of the CIA's "so-called 'extraordinary rendition' program." First Amended Compl. ¶¶ 1-2.  Although the President and other officials have acknowledged that the CIA operates a terrorist detention and interrogation program ("program"), these officials have specifically refused to confirm or deny any operational details concerning that program--including whether any private entities or other countries assisted the CIA in conducting the program; the dates and locations of any detentions and interrogations; the methods of interrogation employed in the program; and the names of any individuals detained and interrogated by the CIA (other than fifteen individuals whose identities have been divulged so that they can be brought to trial).  This information remains properly classified as sources and methods of intelligence gathering.

For the reasons set forth in both his public declaration and a classified declaration which has been lodged for the Court's *in camera*, *ex parte* review, the Director of the Central Intelligence Agency ("DCIA"), Gen. Michael V. Hayden, USAF, has determined that allowing plaintiffs' claims to proceed would risk the disclosure of highly classified information concerning the alleged "intelligence activities, sources, and methods" of the CIA.  Formal Claim of State Secrets and Statutory Privileges By Gen. Michael V. Hayden, USAF, Director, Central Intelligence Agency ("Public Hayden Decl.") ¶ 3.  Because making public such information "reasonably could be expected to cause serious--and, in some instances, exceptionally grave--damage to the national security of the United States," Gen. Hayden has asserted the state secrets privilege and a statutory privilege under the National Security Act to protect against its disclosure. *Id.* ¶¶ 3, 11.

In particular, Gen. Hayden's privilege assertions, discussed in greater detail below, cover the

Memorandum of the United States in Support of Motion to
Dismiss, or, in the Alternative, for Summary Judgment
Case No. C-07-02798-JW

1  classified operational details of the CIA terrorist detention and interrogation program, including:

2  whether the CIA cooperated with particular foreign governments or private entities (like Jeppesen)

3  in carrying out the program; the locations of detentions and interrogations conducted in that program;

4  the methods of interrogation employed by the CIA; and the identities of any individuals detained in

5  the program that have not already been acknowledged by the President or the CIA. *See* Public

6  Hayden Decl. ¶ 20. There can be no dispute that Gen. Hayden has properly invoked these privileges.

7  And, as set forth below, there should be no doubt that, affording his judgment the "utmost

8  deference," Gen. Hayden has demonstrated that disclosure of this information reasonably could be

9  expected to cause serious--and, in some instances, exceptionally grave--damage to national security.

10      Under well-established precedent, if the Court upholds Gen. Hayden's privilege assertions,

11  the information covered by the privileges must be "completely removed from the case." *Kasza v.*

12  *Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998). Where, as here, that information is central to the

13  case, and where it is apparent now that plaintiffs' claims cannot be litigated absent this information,

14  dismissal is required. *See id.* at 1166-67 (recognizing a class of cases that must be dismissed because

15  their "very subject matter" is a state secret). Proceeding with this case would require plaintiffs to

16  prove that they were detained and interrogated by the CIA; that they were subjected to the treatment

17  they allege; and that the CIA cooperated with defendant and particular foreign governments in

18  carrying out plaintiffs' detention and interrogation. Because this is the very information over which

19  Gen. Hayden has asserted the privilege, "the very subject of this litigation is itself a state secret," and

20  "no amount of effort and care on the part of the court and the parties will safeguard privileged

21  material." *Fitzgerald v. Penthouse Intern., Ltd.*, 776 F.2d 1236, 1243-44 (4th Cir. 1985).

22  Additionally, because the absence of this information deprives the plaintiffs of the ability to make

23  out a *prima facie* case in support of their claims, and similarly deprives the defendant of information

24  necessary to defend against these claims, the state secrets privilege would require dismissal of this

25  suit even if its "very subject matter" were not a state secret. *See Kasza,* 133 F.3d at 1166.

26      The United States does not lightly invoke the state secrets or National Security Act privileges,

27

28

1  nor does it lightly seek dismissal of this action.  To the contrary, we recognize that the result of these

2  privilege assertions is to deprive plaintiffs of the information necessary to litigate their claims, and

3  that this outcome is a "harsh sanction."  *Bareford v. General Dynamics Corp.*, 973 F.2d 1138, 1144

4  (5th Cir. 1992).  However, as the Ninth Circuit has noted, "the results are harsh in either direction

5  and the state secret doctrine finds the greater public good--ultimately the less harsh remedy--to be

6  dismissal."  *Kasza*, 133 F.3d at 1167 (quoting *Bareford*, 973 F.2d at 1144); *see also Fitzgerald*, 776

7  F.2d at 1238 n.3 ("When the state secrets privilege is validly asserted, the result is unfairness to

8  individual litigants--through the loss of important evidence or dismissal of a case--in order to protect

9  a greater public value.").  That result is unavoidable in a case such as this, where "the very question

10 upon which the case turns is itself a state secret."  *Fitzgerald*, 776 F.2d at 1238.

## BACKGROUND

### I.    THE PLAINTIFFS' CLAIMS AGAINST JEPPESEN

13        Each of the five plaintiffs in this action alleges that he was arrested, transported, detained,

14 and interrogated as part of the CIA's terrorist detention and interrogation program.  Plaintiffs contend

15 that they were subject to "forced disappearance, torture, and inhumane treatment . . . by agents of the

16 United States and other governments."  First Amended Compl. ¶ 1.  Plaintiffs further allege that

17 defendant Jeppesen "provided direct and substantial services to the United States for its so-called

18 'extraordinary rendition' program, enabling the clandestine and forcible transportation of terrorism

19 suspects to secret overseas detention facilities where they were placed beyond the reach of the law

20 and subjected to torture and other forms of cruel, inhuman, or degrading treatment."  *Id.* ¶ 2.

21        The First Amended Complaint contains two discrete claims for relief.  Each arises under the

22 Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, which states that "[t]he district courts shall have

23 original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law

24 of nations or a treaty of the United States."

25        The first ATS claim alleges that Jeppesen is liable for Plaintiffs' forced disappearance.

26 Plaintiffs contend that Jeppesen is "directly liable" for this alleged violation of international law,

27

Memorandum of the United States in Support of Motion to
Dismiss, or, in the Alternative, for Summary Judgment
Case No. C-07-02798-JW                    -3-

28

1   because it "actively participated in numerous aspects of the logistical planning and implementation

2   of the extraordinary renditions of Plaintiffs, with actual or constructive knowledge that its

3   involvement would result in the secret apprehension and detention of Plaintiffs." First Amended

4   Compl. ¶ 254. In addition, or in the alternative, Plaintiffs also assert that Jeppesen is liable under

5   the ATS because it "conspired with agents of the United States in Plaintiffs' forced disappearance,"

6   because it "aided and abetted agents of the United States, Morocco, Egypt and Jordan in subjecting

7   Plaintiffs to such treatment," and/or because it "demonstrated reckless disregard as to whether

8   Plaintiffs would be subject to forced disappearance." *Id.* ¶ 255-57.

9        The second ATS claim alleges that Jeppesen is liable for Plaintiffs' alleged "torture and other

10  cruel, inhuman, or degrading treatment by agents of the United States, Morocco, and Egypt." *Id.* ¶

11  260. Unlike the first count, this claim does not allege that Jeppesen is directly liable for the alleged

12  tort. Instead, it relies on the same indirect theories of liability that were advanced as alternative bases

13  of liability in the first claim: namely, that Jeppesen "conspired with agents of the United States in

14  Plaintiffs' torture and other cruel, inhuman, or degrading treatment, including their rendition to

15  Morocco, Egypt, and Afghanistan," that it "aided and abetted agents of the United States, Morocco

16  and Egypt in subjecting Plaintiffs to such treatment," and/or that it "demonstrated a reckless

17  disregard as to whether Plaintiffs would be subjected to torture or other cruel, inhuman, or degrading

18  treatment by providing flight and logistical support to aircraft and crew it knew or reasonably should

19  have known would be used in the extraordinary rendition program." *Id.* ¶¶ 262-64.

20  **II.   THE UNITED STATES' STATE SECRETS PRIVILEGE ASSERTION**

21       Gen. Hayden, the Director of the Central Intelligence Agency, has formally asserted the

22  military and state secrets privilege, and has also asserted a claim of privilege under the National

23  Security Act. *See* Public Hayden Decl. ¶ 11. Those privilege claims identify four categories of

24  information put at issue by Plaintiffs' First Amended Complaint that cannot be inquired into in court

25  proceedings without risking serious--and in some instances, exceptionally grave--danger to the

26  national security:

27

1

2

      A.     Information that may tend to confirm or deny whether Jeppesen or any other private entity assisted the CIA with any alleged clandestine intelligence activities, including the CIA terrorist detention and interrogation program;

3

4

      B.     Information that may tend to confirm or deny any alleged cooperation between the CIA and foreign governments regarding clandestine intelligence activities;

5

6

7

      C.     Information concerning the scope and operation of the CIA terrorist detention and interrogation program, such as:  the locations where detainees were held; whether or not the CIA cooperated with particular foreign governments or private entities in conducting this program; the interrogation methods used in the program; and the identities of any individuals detained by the CIA that have not already been publicly acknowledged; and

8

9

      D.     Any other information concerning CIA clandestine intelligence activities that would tend to reveal any intelligence activities, sources, or methods.

10

*Id.* ¶ 20.  Gen. Hayden's Public Declaration makes clear that he made these privilege assertions after

11

personal consideration of the allegations in the First Amended Complaint.  *See id.* ¶ 11.

12

      While Gen. Hayden's Public Declaration offers an explanation of why the information

13

covered by these privilege assertions cannot be disclosed without risking harm to the national

14

security and foreign relations of the United States, it also notes that the full extent of the information

15

protected by the privilege, and the potential harms of disclosure of that information, cannot be

16

discussed on the public record.  *See* Public Hayden Decl. ¶¶ 11, 25.  Thus, Gen. Hayden has also

17

submitted a classified *in Camera*, *ex parte* declaration ("Classified Hayden Decl.") setting forth the

18

full basis for his assertion of the state secrets and statutory privileges.[1]

19

20

21

22

23

24

25

26

      [1] This classified *in camera*, *ex parte* declaration has been lodged with the Department of Justice's Security Officer, who will make arrangements for the Court to view the document at the Court's convenience.  A separate Notice of Lodging is filed along with this brief providing the Court with contact information for that Security Officer.

27

Memorandum of the United States in Support of Motion to
Dismiss, or, in the Alternative, for Summary Judgment

28

Case No. C-07-02798-JW         -5-

1

**ARGUMENT**

2

I.     **PLEADING-STAGE RESOLUTION IS APPROPRIATE WHERE PRIVILEGED INFORMATION IS**

3          **CENTRAL TO THE CASE AND IT IS CLEAR THAT THE CASE CANNOT BE LITIGATED WITHOUT THAT INFORMATION**

4          A.     **The State Secrets Privilege Bars Use of Privileged Information Regardless of a Litigant's Need**

5

6          Courts have long recognized the responsibility of the Executive Branch to protect military

7 or state secrets from disclosure. *See, e.g.*, *Totten v. United States*, 92 U.S. 105 (1875); *United States*

8 *v. Burr*, 25 F. Cas. 30 (C.C.D. Va. 1807). In order to safeguard this type of sensitive material, the

Executive Branch may assert the "state secrets privilege," which, when properly asserted, prevents

9 the parties from adducing information that, if disclosed, would harm the national security. *See, e.g.*,

10 *Reynolds*, 345 U.S. 1; *Kasza*, 133 F.3d 1159. Although this privilege "was developed at common

11 law, it performs a function of constitutional significance" because it is essential to the President's

12 Article II powers to conduct foreign affairs and provide for the national defense. *El-Masri v. United*

13 *States*, 479 F.3d 296, 303 (4th Cir. 2007) (citing *United States v. Nixon*, 418 U.S. 683,710 (1974)),

14 *cert. denied*, 76 U.S.L.W. 3021 (U.S. Oct. 9, 2007).

15          The privilege protects a broad range of state secrets, including information the disclosure of

16 which would result in "impairment of the nation's defense capabilities, disclosure of intelligence-

17 gathering methods or capabilities, and disruption of diplomatic relations with foreign Governments."

18 *Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983), *cert. denied sub nom. Russo v. Mitchell*, 465

19 U.S. 1038 (1984) (footnotes omitted); *see also Kasza*, 133 F.3d at 1166 ("[T]he Government may

20 use the state secrets privilege to withhold a broad range of information."). The privilege protects

21 information that, on its face, may appear innocuous but which in a larger context could reveal

22 sensitive classified information. *See Kasza*, 133 F.3d at 1166. Courts often observe that foreign

23 intelligence gathering is akin to the construction of a "mosaic," where each discrete piece of

24 information is part of a larger picture of intelligence activities. *See, e.g.*, *Halkin v. Helms*, 598 F.2d

25 1, 8 (D.C. Cir. 1978) ("*Halkin I*") ("Thousands of bits and pieces of seemingly innocuous

26

27

28

1    information can be analyzed and fitted into place by skilled foreign agents to reveal with startling

2    clarity how the unseen whole must operate."). "Accordingly, if seemingly innocuous information

3    is part of a classified mosaic, the state secrets privilege may be invoked to bar its disclosure and the

4    court cannot order the Government to disentangle this information from other classified

5    information." *Kasza*, 133 F.3d at 1166.

6          As a procedural matter, "[t]he privilege belongs to the Government and must be asserted by

7    it; it can neither be claimed nor waived by a private party." *Reynolds*, 345 U.S. at 7. "There must

8    be a formal claim of privilege, lodged by the head of the department which has control over the

9    matter, after actual personal consideration by the officer." *Id.* at 7-8 (footnotes omitted).

10          In assessing whether to uphold a claim of the state secrets privilege, the court does not

11   balance the respective needs of the parties for the information. Rather, "[o]nce the privilege is

12   properly invoked and the court is satisfied as to the danger of divulging state secrets, the privilege

13   is absolute." *Kasza*, 133 F.3d at 1166. Thus, even though "the claim of privilege should not be

14   lightly accepted," where it is properly asserted to protect military and state secrets, "even the most

15   compelling necessity cannot overcome the claim of privilege." *Reynolds*, 345 U.S. at 11; *Kasza*, 133

16   F.3d at 1166. *See also In re Under Seal*, 945 F.2d 1285, 1287 n.2 (4th Cir. 1991) (state secrets

17   privilege "renders the information unavailable regardless of the other party's need in furtherance of

18   the action"); *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 399 (D.C. Cir. 1984) (state

19   secrets privilege "cannot be compromised by any showing of need on the part of the party seeking

20   the information"). "No competing public or private interest can be advanced to compel disclosure

21   of information found to be protected by a claim of privilege." *Ellsberg*, 709 F.2d at 57.

22        **B.    A Court Must Afford "Utmost Deference" to the Government's Predictions of
              the Harm that Would Result From Disclosure of State Secrets**

23

24          As the Ninth Circuit has recognized, "the court's review of the claim of [state secrets]

25   privilege is narrow." *Kasza*, 133 F.3d at 1166. Affording the United States' predictive judgments

26   about the harm of disclosure the "utmost deference," a court must uphold the privilege assertion if

27

1    it is satisfied that the government has demonstrated a "reasonable danger" that disclosure of the

2    information will harm the national security.  *See, e.g.*, *Reynolds*, 345 U.S. at 10; *Kasza*, 133 F.3d at

3    1166; *Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544, 547 (2d Cir. 1991).  "[W]hen a judge

4    has satisfied himself that the dangers asserted by the government are substantial and real, he need

5    not--indeed, should not--probe further."  *Sterling v. Tenet*, 416 F.3d 338, 345 (4th Cir. 2005), *cert.*

6    *denied sub nom. Sterling v. Goss*, 546 U.S. 1093 (2006).

7         For both "constitutional" and "practical" reasons, this Court's review of the privilege

8    assertion must begin with the Director's predictive judgment about the harms that would result from

9    disclosure of state secrets.  *El-Masri*, 479 F.3d at 305.  Concern about courts' institutional

10   competence to assess the harm to national security from the disclosure of classified information is

11   particularly acute in the context of intelligence-gathering activities.  *See El-Masri*, 479 F.3d at 305

12   ("[T]he executive branch's expertise in predicting the potential consequences of intelligence

13   disclosures is particularly important given the sophisticated nature of modern intelligence analysis

14   . . . ." (citation omitted)); *Halkin I*, 598 F.2d at 9 ("The courts, of course, are ill-equipped to become

15   sufficiently steeped in foreign intelligence matters to serve effectively in the review of secrecy

16   classifications in that area." (quoting *United States v. Marchetti*, 466 F.2d 1309, 1318 (4th Cir.

17   1972))); *Ellsberg*, 709 F.2d at 57 n.31 ("[T]he probability that a particular disclosure will have an

18   adverse effect on national security is difficult to assess, particularly for a judge with little expertise

19   in this area.").

20        This "utmost deference" standard does not require a court to abdicate its judicial role.  *See*

21   *El Masri*, 479 F.3d at 312.  To the contrary, "[t]he court itself must determine whether the

22   circumstances are appropriate for the claim of privilege."  *Reynolds*, 345 U.S. at 8; *see also In re*

23   *Under Seal*, 945 F.2d at 1288 ("Although the privilege is absolute when properly invoked, the court

24   is the final arbiter of the propriety of its invocation.").  Out of respect for the Court's duty to

25   determine whether the privilege was properly invoked (and whether, if so, the case can proceed),

26   Gen. Hayden has submitted a classified, *in camera*, *ex parte* declaration that describes in detail the

27

28

1   full extent of the information covered by his privilege assertions and the harm that would result from

2   that information's disclosure, even though the law generally does not require such submissions.  *See,*

3   *e.g.*, *Reynolds*, 345 U.S. at 10 ("[W]e will not go so far as to say that the court may automatically

4   require a complete disclosure to the judge before the claim of privilege will be accepted in any

5   case.").

6       **C.    Where the State Secrets Are Central to a Case, the Case Cannot Proceed**

7           Once the court has upheld a claim of the state secrets privilege, the evidence and information

8   identified in the privilege assertion is "completely removed from the case," *Kasza*, 133 F.3d at 1166,

9   and the court must undertake a separate inquiry to determine the consequences of this exclusion on

10  further proceedings.  "The effect of a successful interposition of the state secrets privilege by the

11  United States will vary from case to case." *El-Masri*, 479 F.3d at 306.  "If a proceeding involving

12  state secrets can be fairly litigated without resort to the privileged information, it may continue." *Id.*

13  However, if the state secrets "will be so central to the subject matter of the litigation that any attempt

14  to proceed will threaten disclosure of the privileged matters," the case must be dismissed.

15  *Fitzgerald*, 776 F.2d at 1241-42; *see also El-Masri*, 479 F.3d at 306 ("[I]f 'the circumstances make

16  clear that sensitive military secrets will be so central to the subject matter of the litigation that any

17  attempt to proceed will threaten disclosure of the privileged matters,' dismissal is the proper

18  remedy.'" (quoting *Sterling*, 416 F.3d at 348)).  In such circumstances courts have noted that the

19  "very subject matter" of the action is a state secret, and that resolution of the action "based solely on

20  the invocation of the state secrets privilege" is appropriate.  *Kasza*, 133 F.3d at 1166 (citing

21  *Reynolds*, 345 U.S. at 11 n.26).

22          Courts may dismiss a suit because its "very subject matter" is a state secret even where the

23  suit seeks to adduce information about activities that the government has (at least partially)

24  acknowledged.  For example, in *Fitzgerald*, the court concluded that a libel suit arising out of

25  activities related to a classified Navy program for training marine animals could not proceed, even

26  though the government officially acknowledged the program's existence, because classified aspects

27

28

1   of how the program operated would have been at issue in any adjudication of the alleged libel.  *See*

2   *Fitzgerald*, 776 F.2d at 1242-43 (noting that the "very subject of this litigation is itself a state

3   secret.").  Similarly, in *El-Masri*, the court found that a tort suit against government officials and

4   corporate defendants arising out of an alleged "extraordinary rendition" as part of the CIA terrorist

5   detention and interrogation program--the very same program at issue in this case--could not proceed,

6   even though the government officially acknowledged the program's existence, because such

7   litigation would necessarily probe the program's still-classified operational details.  *See El-Masri*,

8   479 F.3d at 308-09.

9       Moreover, where the "very subject matter" of a suit is a state secret, a plaintiff's alleged

10  personal knowledge of the facts set forth in a complaint is irrelevant if those allegations cannot be

11  *litigated* without threatening the disclosure of state secrets.  As the court noted in *El-Masri*:

12      El-Masri is therefore incorrect in contending that the central facts of this proceeding
        are *his allegations* that he was detained and interrogated under abusive conditions,
13      or that the CIA conducted the rendition program that has been acknowledged by
        United States officials.  Facts such as those furnish the general terms in which
14      El-Masri has related his story to the press, but advancing a case in the court of public
        opinion, against the United States at large, is an undertaking quite different from
15      prevailing against specific defendants *in a court of law.*

16  *Id.* (emphasis added).  *See also Black v. United States*, 62 F.3d 1115, 1117-19 (8th Cir. 1995)

17  (upholding a state secrets privilege assertion even though plaintiff claimed personal knowledge of

18  alleged contacts with CIA agents); *Fitzgerald*, 776 F.2d at 1237, 1242 & n.8 (upholding state secrets

19  privilege over information about a Navy marine mammal program despite the fact that the plaintiff

20  was involved with the program and had "*personal knowledge of classified matters within the scope*

21  *of the*" privilege assertion) (emphasis added); *El-Masri v. Tenet*, 437 F. Supp. 2d 530, 538 (E.D. Va.

22  2006) ("It is self-evident that a private party's allegations purporting to reveal the conduct of the

23  United States' intelligence services overseas are entirely different from the official admission or

24  denial of those allegations.").  These cases correctly recognize that the focal point of the analysis is

25  whether proving such allegations *through litigation* would cause harm, not whether private

26  individuals or entities have previously made, or could make, public statements or allegations.

27

1    Even if the "very subject matter" of an action is not a state secret, if the plaintiff cannot make

2    out a *prima facie* case absent the excluded state secrets, the case must be dismissed. *See Kasza*, 133

3    F.3d at 1166; *Halkin v. Helms*, 690 F.2d 977, 998-99 (D.C. Cir. 1982) ("*Halkin II*"); *Fitzgerald*, 776

4    F.2d at 1240-41.  Similarly, if the privilege "'deprives the defendant of information that would

5    otherwise give the defendant a valid defense to the claim, then the court may grant summary

6    judgment to the defendant.'" *Kasza*, 133 F.3d at 1166 (quoting *Bareford*, 973 F.2d at 1141).

7         **D.    This Case Should Be Resolved at the Pleading Stage**

8         Plaintiffs already have evinced a fundamental misunderstanding of the effect of asserting the

9    state secrets and statutory privileges in this litigation.  In opposing Defendant's Motion to Change

10   Time, plaintiffs stated that assertion of the state secrets privilege "before there is any evidence at

11   issue" is "premature as a matter of law."  Plaintiffs' Opposition to United States' Request for a Stay

12   and Defendant's Motion to Change Time ("Pls. Opp. Change Time") (Docket #38) at 1.  That claim-

13   -which, plaintiffs concede, is directly contrary to the Fourth Circuit's holding in *El-Masri*, *see* Pls.

14   Opp. Change Time at 1 n.1--is simply incorrect.  "[D]ismissal on the pleadings" is appropriate where

15   "the very subject matter of the action was a state secret."  *El-Masri*, 479 F.3d at 306 (citing *Tenet*,

16   544 U.S. at 9, *Reynolds*, 345 U.S. 1, and *Totten*, 92 U.S. 105).

17        The Supreme Court has repeatedly upheld (or directed) the pleading-stage dismissals of suits

18   whose "very subject matter" is a state secret.  For example, in *Totten v. United States*, 92 U.S. 105

19   (1875), the court refused to entertain a suit attempting to enforce an alleged espionage contract

20   between the President and a private citizen, who purportedly agreed to undertake clandestine

21   intelligence-gathering activities.  The Court observed that "[i]t may be stated as a general principle,

22   that public policy forbids the maintenance of *any suit* in a court of justice, the trial of which would

23   inevitably lead to the disclosure of matters which the law itself regards as confidential."  *Id.* at 107

24   (emphasis added).

25        Applying *Totten*, the Supreme Court has upheld several subsequent pleading-stage dismissals

26   of actions in which state secrets were central to the maintenance of the suit.  In *Weinberger v.*

27   Memorandum of the United States in Support of Motion to
     Dismiss, or, in the Alternative, for Summary Judgment

28   Case No. C-07-02798-JW                    -11-

1    *Catholic Action of Haw./Peace Ed. Project*, 454 U.S. 139 (1981), for example, the Court found that

2    a suit seeking to compel the Navy to prepare an Environmental Impact Statement about the

3    hypothetical effects of storing nuclear weapons at a particular facility could not go forward, because

4    national security concerns prevented the Navy from confirming or denying whether it stored nuclear

5    weapons at the facility. *See id.* at 146-47 (citing *Totten*, 92 U.S. at 107, and *Reynolds*, 345 U.S. 1).

6    Similarly, the Court upheld a pleading-stage dismissal in *Tenet v. Doe*, 544 U.S. 1, 8-9 (2005),

7    where, like in *Totten*, the plaintiff attempted to enforce the terms of an alleged espionage contract.

8    The Court cited *Totten*, *Reynolds*, and *Weinberger* for the proposition that cases that will inevitably

9    lead to the disclosure of state secrets should not proceed beyond the pleading stage. *Id.* at 8.  Indeed,

10    even in *Reynolds*--a case where the Court upheld the assertion of the state secrets privilege but

11    nevertheless allowed the suit to proceed past the pleading stage--the Court approvingly cited *Totten*'s

12    observation that dismissal would be appropriate in instances where state secrets are central to the

13    litigation.  *See* 345 U.S. at 11 n.26 (noting that in *Totten*, "where the very subject matter of the action

14    . . . was a matter of state secret," the Court properly "dismissed on the pleadings *without ever*

15    *reaching the question of evidence*, since it was so obvious that the action should never prevail over

16    the privilege" (emphasis added)).[2]

17          Following this Supreme Court guidance, the Ninth Circuit has resolved state secrets privilege

18    cases at the pleading stage because the facts central to the litigation were covered by the assertion

19    of the privilege.  In *Kasza*, for example, the Ninth Circuit found that a valid assertion of the state

20

21    _____

22          [2] Even though *Totten* itself concerned the narrow circumstance of a contract for clandestine
      espionage services, the "general principle" announced therein is not limited to that context.  Rather,
23    it applies more generally to "*any suit* . . . the trial of which would inevitably lead to the disclosure
      of matters which the law itself regards as confidential."  *Tenet*, 544 U.S. at 8 (rejecting court of
24    appeals' conclusion that "*Totten* developed merely a contract rule, prohibiting breach-of-contract
      claims seeking to enforce the terms of espionage agreements").  *See also El-Masri*, 479 F.3d at 306
25    ("In a recent decision unanimously reaffirming *Totten*'s validity, the Supreme Court approvingly
      quoted *Reynolds*'s discussion of *Totten* as a matter in which dismissal on the pleadings was
26    appropriate because the very subject matter of the action was a state secret.").

27    Memorandum of the United States in Support of Motion to
      Dismiss, or, in the Alternative, for Summary Judgment
28    Case No. C-07-02798-JW                          -12-

1   secrets privilege over "the very subject matter" of the litigation prevented the case from proceeding

2   past the pleading stage:

> Not only does the state secrets privilege bar Frost from establishing her prima facie
> case on any of her eleven claims, but any further proceeding in this matter would
> jeopardize national security. No protective procedure can salvage Frost's suit.
> Therefore, as the very subject matter of Frost's action is a state secret, we agree with
> the district court that her action must be dismissed.

6   *Kasza*, 133 F.3d at 1170.  Similarly, in *Weston v. Lockheed Missiles & Space Co.*, 881 F.2d 814, 816

7   (9th Cir. 1989), the Ninth Circuit noted that, "[c]ontrary to [appellant's] assertion at oral argument,

8   the state secrets privilege *alone can be the basis for dismissal of an entire case*." (emphasis added).

9           While this Supreme Court and Ninth Circuit precedent is more than sufficient to defeat

10  Plaintiffs' contrary contention that pleading-stage dismissals are "premature as a matter of law,"

11  these holdings are by no means outliers.   Numerous other courts of appeals have followed the

12  Supreme Court's lead in *Totten*, *Reynolds*, *Weinberger*, and *Tenet*, by resolving cases at the pleading

13  stage because the suits' "very subject matter" was a state secret, or where it was clear at the outset

14  that the parties' claims and defenses could not be established without recourse to such secrets.  *See,*

15  *e.g.*, *Tenenbaum v. Simonini*, 372 F.3d 776, 777-78 (6th Cir. 2004); *El-Masri*, 479 F.3d at 311;

16  *Sterling*, 416 F.3d at 348 (quoting *Molerio v. FBI*, 749 F.2d 815, 821 (D.C. Cir. 1982)); *Black v.*

17  *United States*, 62 F.3d 1115, 1118-19 (8th Cir.1995); *Bareford*, 973 F.2d at 1140; *Zuckerbraun*, 935

18  F.2d at 548; *Fitzgerald*, 776 F.2d at 1243; *Halkin II*, 690 F.2d at 1001.  *Cf. American Civil Liberties*

19  *Union v. NSA*, 493 F.3d 644, 653 (6th Cir. 2007) (dismissing Fourth Amendment claim on standing

20  grounds because "the plaintiffs do not--and because of the State Secrets Doctrine cannot--produce

21  any evidence that any of their own communications have ever been intercepted by the NSA, under

22  the TSP, or without warrants"), *petition for cert. filed* (Oct. 3, 2007) (No. 07-468); *Bowles v. United*

23  *States*, 950 F.2d 154, 156 (4th Cir. 1991) (affirming dismissal of the United States as a party before

24  discovery because "no amount of effort or care will safeguard the privileged information . . . . [I]t

25  is evident that the case against the United States cannot be tried without compromising the

26  information sought to be protected").  This long, unbroken line of cases holding that pleading-stage

27

28

1   resolution of state secrets privilege cases may be both appropriate and necessary amply defeats

2   plaintiffs' contention that such dismissals are "premature as a matter of law."

3                                                    * * *

4           In light of these principles, two issues remain for this Court's consideration.  First, granting

5   the Director's judgment the "utmost deference," the Court must determine whether Gen. Hayden has

6   demonstrated that there is at least a reasonable danger that disclosure of the privileged information

7   will cause harm to the national security.  Second, if the Court determines the privileges are properly

8   asserted, it must also determine whether the privileged information concerns the "very subject

9   matter" of the case or is so central to the case that the case cannot be litigated without reference to

10  privileged information.  As set forth below, both questions must be answered in the affirmative;

11  therefore, this Court should dismiss the suit or, in the alternative, enter summary judgment against

12  plaintiffs.[3]

---

20          [3] This Motion is styled as a Motion to Dismiss or, in the Alternative, for Summary Judgment,

21  because some courts have suggested that "[t]he precise rule under which dismissal should occur is
    not entirely clear."  *Zuckerbraun*, 935 F.2d at 547.  While courts, including the Ninth Circuit,

22  regularly speak of "dismissing" cases on state secrets privilege grounds where the "very subject
    matter" is a state secret, *see, e.g.*, *Kasza*, 133 F.3d at 1166, some courts have suggested that "[w]here

23  the effect of the invocation of the privilege is to prevent the plaintiff from establishing a prima facie

24  case, the dismissal is probably most appropriate under Rule 56 on the ground that plaintiff, who
    bears the burden of proof, lacks sufficient evidence to carry that burden."  *Zuckerbraun*, 935 F.2d

25  at 547.  Because the "very subject matter" of this suit is a state secret, dismissal under Rule 12 is

26  appropriate.  If, however, the Court were to conclude that Rule 56 is the applicable Rule, summary
    judgment would be appropriate.

27  Memorandum of the United States in Support of Motion to
    Dismiss, or, in the Alternative, for Summary Judgment

28  Case No. C-07-02798-JW                              -14-

## II.  THE DCIA HAS PROPERLY ASSERTED THE STATE SECRETS PRIVILEGE IN THIS CASE

### A.  The Declarations from the Director of the CIA Meet all of the Procedural Requirements for Invoking the State Secrets Privilege

The United States has properly asserted the state secrets privilege in this case.  Where the state secrets privilege is asserted, there must be (1) a "formal claim of privilege"; (2) "lodged by the head of the department which has control over the matter"; and (3) "after actual personal consideration by that officer."  *Reynolds*, 345 U.S. at 7-8; *see also Kasza*, 133 F.3d at 1169 ("Here, after actual personal consideration, the person that *Reynolds* requires to claim the privilege publicly claimed it.").  There can be no dispute that all three criteria are met here.

*First*, the Director of the Central Intelligence Agency, Gen. Michael V. Hayden, has submitted a formal claim of the state secrets and statutory privileges.  *See* Public Hayden Decl. ¶ 11. Moreover, in his public and classified declarations, Gen. Hayden explains how the disclosure of the intelligence activities, sources, and methods covered by these privilege assertions would cause serious--and, in some instances, exceptionally grave--damage to national security.  *See* Public Hayden Decl. ¶¶ 21-25; Classified Hayden Decl. ¶¶ 32-50, 54-70, 74.

*Second*, Gen. Hayden is the "head of the department which has control over the matter[s]" covered by the assertion of the privilege.  *Reynolds*, 345 U.S. at 8.  As the Director of the CIA, Gen. Hayden "lead[s] the CIA and manage[s] the Intelligence Community's human intelligence and open source collection programs on behalf of the Director of National Intelligence (DNI)."  Public Hayden Decl. ¶ 1.  Gen. Hayden is thus statutorily charged with "collecting information through human sources and by other appropriate means, correlating and evaluating intelligence related to the national security and providing appropriate dissemination of such intelligence, providing overall direction for coordination of the collection of national intelligence outside the United States through human sources by elements of the intelligence community authorized to undertake such collection, and performing such other functions and duties related to intelligence affecting the national security as the President, or the Director of National Intelligence (DNI), may direct."  *Id.* ¶ 5 (citing 50 U.S.C. §

Memorandum of the United States in Support of Motion to
Dismiss, or, in the Alternative, for Summary Judgment
Case No. C-07-02798-JW                    -15-

1    403-4a(d)).  Additionally, the Director of National Intelligence, who serves as head of the nation's

2    intelligence community, has directed the DCIA to "protect[] CIA sources and methods from

3    unauthorized disclosure."  *Id.* ¶ 6.  The information covered by Gen. Hayden's assertion of the

4    privilege, which concerns allegations related to the CIA's terrorist detention and interrogation

5    program, clearly falls within these responsibilities, making Gen. Hayden the relevant "head of the

6    department which has control over the matter" at issue in this case.

7        *Third*, and finally, Gen. Hayden made this assertion of the state secrets privilege "in [his]

8    capacity as head of the CIA after personal consideration of the matter."  Public Hayden Decl. ¶ 11.

9    Thus, all three of the *Reynolds* criteria for properly asserting the privilege are met.

10        **B.    The Director Has Demonstrated That Disclosure of the Information Covered By
             The Privilege Assertions Reasonably Could Be Expected to Cause Serious--And,
11           In Some Instances, Exceptionally Grave--Damage to the National Security and
             Foreign Relations of the United States**

12        As noted above, "the court's review of the claim of [state secrets] privilege is narrow."

13    *Kasza*, 133 F.3d at 1166.  "[T]he court must be satisfied that under the particular circumstances of

14    the case, 'there is a reasonable danger that compulsion of the evidence will expose military matters

15    which, in the interest of national security, should not be divulged.'"  *Id.* (quoting *Reynolds*, 345 U.S.

16    at 10).  In making that determination, the Court must give "utmost deference" to the government's

17    assessment of the damage that would flow from the disclosure of the information in question.  *See,*

18    *e.g.*, *Kasza*, 133 F.3d at 1166; *Zuckerbraun*, 935 F.2d at 547; *Halkin I*, 598 F.2d at 9.  "[W]hen a

19    judge has satisfied himself that the dangers asserted by the government are substantial and real, he

20    need not--indeed, should not--probe further."  *Sterling*, 416 F.3d at 345.

21        Gen. Hayden's public and classified *in camera*, *ex parte* declarations fully support his

22    assessment that the risk of damage flowing from disclosure of the privileged information in this case

23    is "substantial and real."  *Sterling*, 416 F.3d at 345.  For example, Gen. Hayden explains that

24    disclosure of information concerning whether or not Jeppesen or other private entities assisted the

25    United States with clandestine intelligence activities reasonably could be expected to damage

26

27    Memorandum of the United States in Support of Motion to
      Dismiss, or, in the Alternative, for Summary Judgment
28    Case No. C-07-02798-JW                -16-

1    national security because that information would reveal to adversaries the scope and capabilities of

2    the United States' clandestine intelligence programs. *See* Public Hayden Decl. ¶ 21. The CIA is not

3    free to disclose who it does or does not work with, in what capacity, and to what extent, in

4    connection with clandestine activities, because that information constitutes one of the sources and

5    methods of intelligence gathering that must be protected. *See Maxwell v. First Nat. Bank of*

6    *Maryland*, 143 F.R.D. 590, 599 (D. Md. 1992) ("The state secret that must be protected is the

7    existence of any relationship between the CIA and ATC or FNB."), *aff'd*, 998 F.2d 1009 (4th Cir.

8    1993) (Mem.), *cert. denied*, 510 U.S. 1091 (1994). To disclose how clandestine activities are (or

9    are not) conducted would, quite obviously, disclose classified information. The United States has

10   a longstanding practice of generally refusing to confirm or deny allegations concerning clandestine

11   intelligence activities because if the United States were to deny such allegations where they are

12   incorrect, that would create an inference that such allegations must be correct when they are not

13   denied. *See* Public Hayden Decl. ¶ 9.[4]

14          Similarly, Gen. Hayden explains why information tending to confirm or deny whether the

15   United States cooperated with particular foreign governments in carrying out clandestine intelligence

16   activities, including the terrorist detention and interrogation program, cannot be disclosed without

17   damaging the national security and foreign relations of the United States. As Gen. Hayden notes,

18   "[w]hen foreign governments cooperate with the CIA in clandestine intelligence activities, they do

19   so under assurances from the CIA that the fact of their cooperation will remain secret." Public

20   _____

21          [4] The fact that the United States is not named as a defendant in the First Amended Complaint
     does not lessen its need to avoid disclosures of information covered by the privilege assertions.
22   Courts have recognized that development of factual issues surrounding allegations of clandestine
     intelligence activities--even if conducted by private parties--can nonetheless encroach upon state
23   secrets that the privilege is designed to protect. *See, e.g., Terkel v. AT & T Corp.,* 441 F. Supp. 2d
     899, 917 (N.D. Ill. 2006) ("[T]he Court is persuaded that requiring AT&T to confirm or deny
24   whether it has disclosed large quantities of telephone records to the federal government could give
     adversaries of this country valuable insight into the government's intelligence activities. Because
25   requiring such disclosures would therefore adversely affect our national security, such disclosures
     are barred by the state secrets privilege.")
26

27   Memorandum of the United States in Support of Motion to
     Dismiss, or, in the Alternative, for Summary Judgment
28   Case No. C-07-02798-JW                    -17-

1   Hayden Decl. ¶ 23.  If the United States were forced to respond to such allegations of cooperation

2   with other countries--or if the parties were permitted to offer proof in a United States court

3   concerning such allegations--it would violate the assurances of secrecy that the CIA gives its

4   intelligence partners.  In the future, such partners would be less likely to cooperate with the United

5   States in intelligence-gathering activities.  This lack of cooperation would have obvious, negative

6   consequences for the foreign relations and foreign activities of the United States.  *See id.*

7       Gen. Hayden's declarations also demonstrate that disclosure of information concerning the

8   other alleged operational details of the CIA terrorist detention and interrogation program--including

9   the identities of individuals subject to the program, the dates and locations of any such detention and

10  interrogation, and the interrogation methods employed as part of that program--can reasonably be

11  expected to cause damage to the national security.  This type of information constitutes the heart of

12  the CIA's sources and methods of intelligence gathering.  *See* Public Hayden Decl. ¶ 24.  Permitting

13  litigation over whether these plaintiffs were in CIA custody in the places and at the times alleged in

14  the First Amended Complaint, whether they were subject to the treatment they allege, and whether

15  Jeppesen was involved in or aware of such alleged treatment, would result in a full exploration of

16  the workings of the CIA's clandestine intelligence activities.  Gen. Hayden notes that permitting the

17  parties to probe this information would degrade the effectiveness of the CIA's intelligence-gathering

18  capabilities by, for example, "providing terrorists information about interrogation methods that

19  would assist their interrogation resistance programs."  *Id.*

20      Finally, Gen. Hayden makes clear that the full scope of the information subject to his

21  privilege assertions, and the assessment of all the harms that would follow from the disclosure of that

22  information, cannot be discussed on the public record.  *See* Public Hayden Decl. ¶ 25.  Therefore,

23  Gen. Hayden has submitted a classified *in camera*, *ex parte* declaration to fully explain his bases for

24  asserting the privileges.  Affording these assessments of the harm that would flow from the

25  disclosure of the privileged information "utmost deference," there can be no doubt that there is a

26  "reasonable danger" that proceeding with this case would result in the disclosure of information

27

28

1  "which, in the interest of national security, should not be divulged," and that the privileges have been

2  validly asserted.  *Kasza*, 133 F.3d at 1166 (internal quotation marks omitted).

3  **C.    The Director's Assertion of the State Secrets and Statutory Privileges Over the Information in Question is Proper, Notwithstanding the Executive Branch's Limited Acknowledgment of the Existence of the CIA Terrorist Detention and Interrogation Program, and Public Speculation Concerning that Program**

5       Plaintiffs' First Amended Complaint alleges that then-Director of the CIA George Tenet

6  publicly "described the rendition program as a key counterterrorism tool" in October 2002.  *See* First

7  Amended Compl. ¶¶ 33.  As noted in Gen. Hayden's Public Declaration, the President and other

8  public officials, including Secretary of State Rice, former CIA Directors, and the DCIA himself, have

9  publicly acknowledged the program's existence.  *See* Public Hayden Decl. ¶¶ 12-15 & nn.7-8.

10  Importantly, however, none of these officials disclosed the operational details of this program;

11  indeed, they specifically refused to do so.  *Id.*

12       Public confirmations of the mere *existence* of the program do not undermine the Director's

13  decision to assert the privilege with respect to the program's *operational details*.  Limited

14  declassification of some information concerning a classified program--in this instance, the program's

15  existence, and the identities of fifteen suspected terrorists who are to be brought to trial (none of

16  whom is a plaintiff in this action)--does not require full disclosure of the other, still-classified aspects

17  of that program.  *See, e.g., Ellsberg*, 709 F.2d at 59-60 (government could invoke the state secrets

18  privilege over whether certain plaintiffs were subject to government surveillance, even though it

19  previously disclosed that other individuals had been the subject of such surveillance); *Halkin I*, 598

20  F.2d at 9 (government could assert state secrets privilege as to whether plaintiff in *Halkin I* had been

21  subjected to surveillance even though it acknowledged conducting surveillance of an individual in

22  another case).  *See also Ctr. for Nat'l Security Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 930-31

23  (D.C. Cir. 2003) ("The disclosure of a few pieces of information in no way lessens the government's

24  argument that complete disclosure would provide a composite picture of its investigation and have

25  negative effects on its investigation."); *Salisbury* v. *United States*, 690 F.2d 966, 971 (D.C. Cir.

27

1   1982) ("The fact of disclosure of a similar type of information in a different case does not mean that

2   the agency must make its disclosure in every case."); *Military Audit Project v. Casey*, 656 F.2d 724,

3   752-53 (D.C. Cir. 1981) (rejecting the suggestion that "because the government has revealed some

4   documents it previously considered too sensitive to release, it now must reveal all").  Numerous

5   other facts about the program, and the CIA's intelligence operations in general, remain highly

6   classified despite the government's limited declassification of the program's existence.  Forcing the

7   disclosure of such facts based on the extremely limited public description of the CIA terrorist

8   detention and interrogation program would, as Gen. Hayden explains, cause irreparable harm to the

9   national security by compromising sensitive intelligence sources and methods.  *See* Public Hayden

10  Decl. ¶¶ 21-25; Classified Hayden Decl. ¶¶ 32-50, 54-70, 74.

11          Similarly, the reports by media outlets, public interest groups, and international organizations

12  cited in the First Amended Complaint, *see, e.g.*, ¶¶ 16-17, 38-39, 44-47, which purport to probe the

13  operational details of the CIA terrorist detention and interrogation program, do not undermine the

14  Director's assertion of the state secrets and statutory privileges.  The statements in these reports, even

15  if made by individuals who allege first-hand knowledge, cannot work to declassify information that

16  the Director affirms is properly classified.  *See, e.g.*, *Terkel*, 441 F. Supp. 2d at 913-14 (rejecting

17  contention that media reports about NSA surveillance program render state secrets privilege

18  inapplicable); *see also El-Masri*, 479 F.3d at 311 n.5 (declining to endorse plaintiff's theory that

19  information is ineligible for protection under the state secrets privilege simply because it has been

20  published in the news media).  Classified information is not considered to be "in the public domain

21  *unless there had been official disclosure of it.*"  *Knopf v. Colby*, 509 F.2d 1362, 1370 (4th Cir. 1975)

22  (emphasis added).  "Official disclosure" does not mean public discussion of the information by overt

23  sources.  To the contrary, a finding that classified information has been "official disclosed" requires

24  that: (1) the information at issue must be as specific as the information that has been publicly

25  disclosed; (2) the disputed information must exactly match the information publicly disclosed, *e.g.*,

26  it must involve the same time period or same operation; and (3) the information sought to be released

27  Memorandum of the United States in Support of Motion to
    Dismiss, or, in the Alternative, for Summary Judgment

28  Case No. C-07-02798-JW                         -20-

must already have been publicly released through "an official and documented disclosure." *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) (citing *Afshar v. Dep't of State*, 702 F.2d 1125, 1133 (D.C. Cir. 1983)).  Plaintiffs have not alleged, let alone demonstrated, that the program's operational details have been officially disclosed under this rigorous standard.

## III.    THE DCIA HAS PROPERLY ASSERTED A STATUTORY PRIVILEGE UNDER THE NATIONAL SECURITY ACT

The state secrets privilege is sufficient, on its own, to require removal of the information covered by the Director's privilege assertions from this case.  As the D.C. Circuit observed, "[a] ranking of the various privileges recognized in our courts would be a delicate undertaking at best, but it is quite clear that the privilege to protect state secrets must head the list."  *Halkin I*, 598 F.2d at 7.  However, because the information subject to the Director's privilege assertions concerns the sources and methods of intelligence gathering, that information is also protected by a separate statutory privilege under Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 403-1(i)(1).[5]  *See* Public Hayden Decl. ¶ 11.  This statute requires the Director of National Intelligence ("DNI") to protect intelligence sources and methods from unauthorized disclosure. Under the DNI's direction pursuant to Section 102(A) of the National Security Act, as amended, and consistent with Section 6 of the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C. § 403g, and Executive Order 12333 §§ 1.3(a)(5), (h), Gen. Hayden is responsible for protecting CIA sources and methods from unauthorized disclosure.  *See* Public Hayden Decl. ¶ 6.

This authority to protect intelligence sources and methods from disclosure is rooted in the "practical necessities of modern intelligence gathering," *Fitzgibbon*, 911 F.2d at 761, and has been described by the Supreme Court as both "sweeping," *CIA v. Sims*, 471 U.S. 159, 169 (1985), and "wideranging," *Snepp v. United States*, 444 U.S. 507, 509 (1980).  Sources and methods constitute "the heart of all intelligence operations," *Sims*, 471 U.S. at 167, and "[i]t is the responsibility of the

---

[5] The National Security Act was amended in 2004 by the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, 118 Stat. 3638 (Dec. 17, 2004).

Memorandum of the United States in Support of Motion to
Dismiss, or, in the Alternative, for Summary Judgment
Case No. C-07-02798-JW                          -21-

1   [intelligence community], not that of the judiciary, to weigh the variety of complex and subtle factors

2   in determining whether disclosure of information may lead to an unacceptable risk of compromising

3   the . . . intelligence-gathering process." *Id.* at 180.  Thus, "courts are required to give 'great

4   deference' to the CIA's assertion that a particular disclosure could reveal intelligence sources or

5   methods." *Berman v. C.I.A.*, __ F. 3d __, 2007 WL 2472858, *3 (9th Cir. 2007) (quoting *Sims*, 471

6   U.S. at 179).

7        This statutory privilege, which is asserted over the same sources and methods of intelligence

8   gathering covered by the state secrets privilege, *see* Public Hayden Decl. ¶ 11, provides an

9   additional, independent basis for dismissal of this suit.  Moreover, the fact that intelligence sources

10  and methods are subject to express statutory protections illustrates that the need to protect such

11  information is recognized by Congress as well as the Executive Branch.

12  **IV.   INFORMATION SUBJECT TO THE STATE SECRETS AND STATUTORY
13        PRIVILEGES IS CENTRAL TO THIS CASE AND, THUS, THIS ACTION CANNOT
        PROCEED**

14        "Once the state secrets privilege has been properly invoked, the district court must consider

15  whether and how the case may proceed in light of the privilege." *Fitzgerald,* 776 F.2d at 1243.

16  Where, as here, "the very subject of this litigation is itself a state secret," the case should be

17  dismissed at the outset.  *Id.*

18        Plaintiffs bring two claims under the Alien Tort Statute.  The first alleges that Jeppesen is

19  both directly and vicariously liable for the tort of enforced disappearance.  This count alleges that,

20  "[p]ursuant to the extraordinary rendition program, Plaintiffs were subjected to forced disappearance

21  by agents of the United States, Morocco, and Egypt," and that "[t]he entire extraordinary rendition

22  program is premised on the secret detention of suspects without any official acknowledgment of the

23  location or fact of their detention."  First Amended Compl. ¶ 253.  Plaintiffs' second count alleges

24  that plaintiffs were "subjected to torture and other cruel, inhuman, or degrading treatment by agents

25  of the United States, Morocco, and Egypt."  First Amended Compl. ¶ 260.  Unlike the forced

26  disappearance count, this count does not allege direct liability for Jeppesen; instead, it contends that

27

28

1    Defendant is vicariously liable for the actions of the United States and other governments. *See id.*

2    ¶¶ 262-64 (alleging vicarious liability ranging from conspiracy to reckless disregard).

3        Neither of these claims can be litigated without recourse to information subject to the state

4    secrets and statutory privileges. By their own terms, these claims are premised on the notion that

5    plaintiffs were part of the CIA terrorist detention and interrogation program; that the United States

6    cooperated with particular foreign governments in conducting that program; that Jeppesen culpably

7    assisted the United States and foreign governments in conducting the alleged activities; and that the

8    claimed torts actually occurred as plaintiffs allege. This information is covered by Gen. Hayden's

9    privilege assertions. *See* Public Hayden Decl. ¶ 20. As explained in Gen. Hayden's public and

10    classified *in camera, ex parte* declarations, none of this information can be adduced on the public

11    record because disclosures concerning these issues reasonably could be expected to cause serious--

12    and, in some instances, exceptionally grave--damage to the national security and foreign relations

13    of the United States.

14        Simply put, the parties cannot litigate whether plaintiffs suffered the alleged torts if they

15    cannot adduce information concerning whether these plaintiffs were part of the CIA terrorist

16    detention and interrogation program and whether the defendant assisted the United States in that

17    program. Moreover, even if--indeed, *especially if*--plaintiffs could establish that they were a part

18    of that program, the parties cannot be permitted to litigate over the details of how that program is or

19    was carried out. As in *El-Masri*, the information necessary to proceed cannot be disclosed without

20    risking serious--and, in some instances, exceptionally grave--damage to national security:

21        If El-Masri's civil action were to proceed, the facts central to its resolution would be
        the roles, if any, that the defendants played in the events he alleges. To establish a
22        *prima facie* case, he would be obliged to produce admissible evidence not only that
        he was detained and interrogated, but that the defendants were involved in his
23        detention and interrogation in a manner that renders them personally liable to him.
        Such a showing could be made only with evidence that exposes how the CIA
24        organizes, staffs, and supervises its most sensitive intelligence operations. . . . With
        respect to the defendant corporations and their unnamed employees, El-Masri would
25        have to demonstrate the existence and details of CIA espionage contracts, an
        endeavor practically indistinguishable from that categorically barred by *Totten* and
26        *Tenet v. Doe.* Even marshalling the evidence necessary to make the requisite

27    Memorandum of the United States in Support of Motion to
    Dismiss, or, in the Alternative, for Summary Judgment
28    Case No. C-07-02798-JW                    -23-

1
2
> showings would implicate privileged state secrets, because El-Masri would need to rely on witnesses whose identities, and evidence the very existence of which, must remain confidential in the interest of national security.

3   *El-Masri*, 479 F.3d at 309 (internal citations omitted).  Thus, the Court--like the court in *El-Masri*

4   --should dismiss this suit without further proceedings.  Because it is the Court's duty not to

5   "jeopardize the security which the privilege is meant to protect," *Reynolds*, 345 U.S. at 10, this Court

6   should not risk inadvertent disclosure of classified information by allowing the case to proceed past

7   the pleading stage. "Courts are not required to play with fire and chance further disclosure--

8   inadvertent, mistaken, or even intentional--that would defeat the very purpose for which the privilege

9   exists." *Sterling*, 416 F.3d at 344.

10                                      **CONCLUSION**

11         For all of the foregoing reasons, this court should uphold Gen. Hayden's assertion of the

12   state secrets and statutory privileges and dismiss the case or, in the alternative, enter summary

13   judgment against plaintiffs' claims.

14                                        Respectfully Submitted,

15                                        JEFFREY S. BUCHOLTZ
                                          Acting Assistant Attorney General
16
17                                        SCOTT N. SCHOOLS
                                          United States Attorney
18                                        CARL J. NICHOLS
                                          Deputy Assistant Attorney General
19
20                                        JOSEPH H. HUNT
                                          Director, Federal Programs Branch
21                                        VINCENT M. GARVEY
                                          Deputy Director, Federal Programs Branch
22
                                          */s/ Michael. P. Abate*
23                                        MICHAEL P. ABATE
                                          Trial Attorney
24                                        michael.abate@usdoj.gov
                                          U.S. Department of Justice
25                                        Civil Division, Federal Programs Branch
                                          20 Massachusetts Avenue, NW
26                                        Washington, DC 20001

27   Memorandum of the United States in Support of Motion to
     Dismiss, or, in the Alternative, for Summary Judgment
28   Case No. C-07-02798-JW                    -24-

1

| | Phone: | (202) 616-8209 |
| | Fax: | (202) 616-8470 |

2

*Attorneys for the United States of America*

3

Dated: <u>October 19, 2007</u>

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Memorandum of the United States in Support of Motion to
Dismiss, or, in the Alternative, for Summary Judgment
Case No. C-07-02798-JW                    -25-

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT BY THE UNITED STATES and accompanying MEMORANDUM OF THE UNITED STATES IN SUPPORT OF MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT will be served by means of the Court's CM/ECF system, which will send notifications of such filing to the following:

American Civil Liberties Union
Foundation of Northern California Inc.
Ann Brick
39 Drumm Street
San Francisco, CA 94111

American Civil Liberties Union
Jameel Jaffer
Steven R Shapiro
Steven M. Watt
Benjamin Elihu Wizner
125 Broad Street
18th Floor
New York, NY 10004

International Human Rights Clinic
Washington Square Legal Services, Inc
Margaret L. Satterthwaite
NYU School of Law
245 Sullivan Street
New York, NY 10012

Joseph Scott Klapach
Attorney at Law
355 S. Grand Ave., #3500
Los Angeles, CA 90071-1560

Munger Tolles & Olson
Daniel Paul Collins
Henry Weissman
355 So Grand Ave Ste 3500
Los Angeles, CA 90071-1560

National Litigation Project-Allard K. Lowenstein
International Human Rights Clinic
Hope R Metcalf
Yale Law School
127 Wall Street
New Haven, CT 06520

Memorandum of the United States in Support of Motion to
Dismiss, or, in the Alternative, for Summary Judgment
Case No. C-07-02798-JW

1  Reprieve
   Zachary Philip Katznelson
2  Clive Stafford Smith
   PO Box 52742
3  London, England, UK EC4P 4WS

4                                                    */s/ Michael P. Abate*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  Memorandum of the United States in Support of Motion to
    Dismiss, or, in the Alternative, for Summary Judgment
28  Case No. C-07-02798-JW