1  DANIEL P. COLLINS (SBN 139164)
   Daniel.Collins@mto.com
2  PAUL J. WATFORD (SBN 183283)
   Paul.Watford@mto.com
3  JOSEPH S. KLAPACH (SBN 206345)
   Joseph.Klapach@mto.com
4  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue, 35th Floor
5  Los Angeles, CA  90071-1560
   Telephone:   (213) 683-9100
6  Facsimile:    (213) 687-3702

7  Attorneys for Defendant
   JEPPESEN DATAPLAN, INC.

8

9               UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                      SAN JOSE DIVISION

12 | BINYAM MOHAMED; ABOU ELKASSIM BRITEL; AHMED AGIZA; MOHAMED FARAG AHMAD BASHMILAH; and BISHER AL-RAWI, | CASE NO.  C 07-2798 JW (RS)
   |  | **DEFENDANT JEPPESEN DATAPLAN, INC.'S STATEMENT OF NON-OPPOSITION TO (1) THE UNITED STATES' "MOTION TO INTERVENE"; AND (2) THE UNITED STATES' "MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT"**
   | Plaintiffs, |
   | vs. |
   | JEPPESEN DATAPLAN, INC., |
   | Defendant. | Time:   February 4, 2008, 9:00 A.M.
   |  | Ctrm.:  Courtroom 8, 4th Floor
   |  | The Honorable James Ware

Defendants Jeppesen DataPlan, Inc. ("Jeppesen") respectfully submits this Statement of Non-Opposition to the United States of America's (1) "Motion to Intervene"; and (2) "Motion to Dismiss, or, in the Alternative, for Summary Judgment."

## I. Procedural Background

### A. Plaintiffs' First Amended Complaint

The gravamen of Plaintiffs' First Amended Complaint ("FAC") is that "Jeppesen *entered into an agreement with agents of the CIA* and U.S.-based corporations … to provide flight and logistical support" to flights that were used by the CIA in carrying out "its so-called 'extraordinary rendition' program." (FAC ¶¶ 237, 2, emphasis added.) Specifically, Plaintiffs allege that "[o]n information and belief, Jeppesen provided flight and logistical services for all of the CIA flights" for the aircraft that were registered as "N379P" and "N313P" (*id*., ¶ 53) and that each of the Plaintiffs was transported by the CIA (or its agents) on one or more of those particular aircraft to various locations (such as Morocco, Afghanistan, and Egypt), where they were held in detention. (*Id*., ¶¶ 1, 68, 73-75, 102, 135-39, 157-63, 209-15.) Plaintiffs also allege that they were mistreated by U.S. and/or foreign officials either before or after these alleged flights (or both). (*Id*., ¶¶ 59, 69-72, 96-98, 104-18, 140-48, 156, 163-81, 216-22.)

The FAC does not allege that Jeppesen itself participated in any acts of torture or mistreatment; indeed, the FAC does not allege that Jeppesen owned the relevant aircraft, operated the flights, or even had any personnel on board. (FAC ¶ 237 (alleging that other "U.S.-based corporations … owned and operated" the aircraft).) Rather, Plaintiffs contend that, pursuant to its alleged agreement with the CIA (*id*., ¶¶ 237, 254-55, 262), Jeppesen provided flight services that "enabl[ed] the clandestine and forcible transportation of terrorism suspects to overseas detention facilities where they were placed beyond the reach of the law and subjected to torture and other forms of cruel, inhuman, or degrading treatment." (*Id*., ¶ 2.)

Based on these allegations, Plaintiffs assert two claims against Jeppesen under the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS").[1]  Plaintiffs' first cause of action seeks to hold Jeppesen

---
[1] In *Sosa v. Alvarez-Machain*, 542 U.S. 692, 724 (2004), the Supreme Court held that the ATS, which was first enacted in 1789, "is a jurisdictional statute creating no new causes of action." The Court held, however, that the ATS's jurisdictional grant confirmed that the federal courts

liable for the alleged "forced disappearance" of Plaintiffs, which they assert was in violation of international law.  (FAC ¶¶ 254-57.)  The FAC invokes two alternative legal theories for holding Jeppesen liable under this claim.  First, the FAC rests on the (debatable) legal premise that, by alleging that Jeppesen provided flight services that enabled *the CIA* to carry out the flights, Plaintiffs have alleged sufficient facts to establish that Jeppesen is "*directly* liable" for Plaintiffs' alleged forced disappearance.  (*Id*., ¶ 254, emphasis added.)  *Cf. Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 1972-74 (2007) (under ordinary pleading standards, the plaintiff must plead "more than labels and conclusions" and must instead allege "enough facts to state a claim to relief that is plausible on its face," especially in light of any "obvious alternative explanation").  Second, Plaintiffs alternatively assert that Jeppesen is *secondarily* liable for the "forced disappearance[s]" allegedly carried out by the CIA, because Jeppesen allegedly "conspired with" or "aided and abetted" the CIA.  (FAC ¶¶ 255-57.)

Plaintiffs' second cause of action asserts that Jeppesen is liable for various acts of torture and cruel, inhuman, and degrading treatment allegedly inflicted on Plaintiffs by the CIA and others in violation of international law.  (FAC ¶¶ 260-64.)  This claim concededly rests solely on a theory of secondary liability.  (*Id*., ¶¶ 262-64.)

### B.   The United States' Motions to Intervene and to Dismiss

On September 6, 2007, the United States filed a "Statement of Interest" stating that it was considering invoking the state secrets privilege and that it would determine by October 19 whether to seek to intervene in this action and to move to dismiss the case.  In its Statement of Interest, the United States expressed its view that Jeppesen should *not* file a response to the FAC in advance of the United States' determination whether to assert the state secrets privilege.  Accordingly, Jeppesen promptly filed a motion to defer its response to the FAC until after the

---

retained a "restrained" federal common law authority to "adapt[] the law of nations to private rights."  *Id*. at 725, 728.  The Court emphasized that "great caution" must be exercised before invoking this common law authority, which has "such obvious potential to affect foreign relations."  *Id*. at 728, 731.  Accordingly, the Court imposed, *inter alia*, a "demanding standard" for determining which international law norms might "raise even the possibility of a private cause of action."  *Id*. at 738 n.30.  Plaintiffs' FAC seeks to have this Court invoke this limited federal common law authority in order to fashion a private right of action to enforce what Plaintiffs contend are requirements of international law.

1  resolution of a possible motion to dismiss by the United States.  This Court granted that motion
2  on September 11, 2007.  Under the Court's order, Jeppesen's response to the FAC is not due until
3  10 days after the entry of an order disposing of the United States' motion to dismiss (unless, of
4  course, the FAC has already been dismissed pursuant to the United States' motion).

5  On October 19, 2007, the United States filed a motion to intervene as well as a motion to
6  dismiss the action based on the CIA Director's personal assertion of the state secrets privilege.
7  *Cf. El-Masri v. United States*, 479 F.3d 296 (4th Cir. 2007) (affirming dismissal, based on the
8  state secrets privilege, of similar action against CIA official and against several private companies
9  that allegedly operated "rendition" flights), *cert. denied*, 76 U.S.L.W. 3021 (2007); *cf. also Al-*
10 *Haramain Islamic Foundation, Inc. v. Bush*, ___ F.3d ___, 2007 WL 3407182 at *10 (9th Cir.
11 Nov. 16, 2007) (noting that *El-Masri* relied on an "expansive" understanding of when the "very
12 subject matter" of a lawsuit is a state secret, and that "[i]ndeed, in that case, *the facts may have*
13 *counseled for such an approach*") (emphasis added); *id*. at *6, *10 (also noting that, even if the
14 "very subject matter" is not a state secret, the privilege may still require dismissal if it may
15 preclude the plaintiff from establishing a prima facie case or may deprive the defendant of the
16 means to defend itself).

17 **II.     Jeppesen Does Not Oppose Either the Motion to Intervene or the Motion to Dismiss**

18 The United States' motion to dismiss is based on the CIA Director's assertion of the state
19 secrets privilege—a privilege that the courts have held belongs to the Government alone and
20 which therefore *cannot* be asserted or waived by private parties.  *See*, *e.g.*, *United States v.*
21 *Reynolds*, 345 U.S. 1, 7-8 (1953).  Moreover, in contending that the state secrets privilege
22 requires dismissal of this action, the United States does not independently challenge the
23 sufficiency of the FAC, but instead assumes *arguendo* that the complaint is otherwise proper.

24 Because the United States' motion to dismiss raises no issue concerning the sufficiency or
25 viability of the FAC apart from the applicability of a privilege that belongs to the Government
26 alone, nothing in that motion in any way limits or affects any grounds that may be available to
27 Jeppesen to challenge the sufficiency or viability of the FAC, and likewise nothing in that motion
28 can properly limit or affect any defenses, legal or otherwise, that Jeppesen may have to the claims

- 3 -

1 | asserted by the Plaintiffs.  As noted above, Jeppesen has not yet been required to file any response to the FAC, and all of its available factual and legal defenses therefore remain fully preserved.

In light of the foregoing, Jeppesen does not oppose either the United States' motion to intervene or its motion to dismiss the FAC.

DATED:  November 27, 2007

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP


By:     /s/ *Daniel P. Collins*
             Daniel P. Collins

Attorneys for Defendant
JEPPESEN DATAPLAN, INC.

- 4 -

DEFT.'S NON-OPPOSITION TO U.S. MOT. TO INTERVENE AND U.S. MOT.TO DISMISS—C-07-2798 JW