# EXHIBIT C

| UNITED NATIONS | |  |
|---|---|---|

 **General Assembly**

Distr.
GENERAL

A/HRC/4/G/17
30 March 2007

ENGLISH
Original: ARABIC/ENGLISH

HUMAN RIGHTS COUNCIL
Fourth session
Agenda item 2

# IMPLEMENTATION OF GENERAL ASSEMBLY RESOLUTION 60/251 OF 15 MARCH 2006 ENTITLED "HUMAN RIGHTS COUNCIL"

### Note verbale dated 22 March 2007 from the Permanent Mission of Jordan to the United Nations Office at Geneva addressed to the Office of the High Commissioner for Human Rights

The Permanent Mission of the Hashemite Kingdom of Jordan presents its compliments to the Office of the High Commissioner for Human Rights and the secretariat of the Human Rights Council, and has the honour to attach herewith a copy in Arabic* of the Government's comments on the addendum to the report of the Special Rapporteur on torture and other cruel, inhuman or degrading treatment or punishment, Mr. Manfred Nowak (A/HRC/4/33/Add.3) of 5 January 2007 on his mission to Jordan.

The Permanent Mission of the Hashemite Kingdom of Jordan would be grateful to the Office of the High Commissioner if the above comments were made available on the website of the Council as an official document, together with its annex.

---

\* Reproduced in the annex in the language of submission and in English only.

GE.07-12446  (E)   100507   110507

provided with every facility, including access to the Department's custody wing. The Special Rapporteur met with all prisoners on their own and without any interference by the security officers present. The Special Rapporteur's claims about torture at the Department's custody centre are all being investigated and those responsible will be punished, if found guilty.

**The Special Rapporteur refers to allegations about persons being held and tortured in secret prisons run by United States forces in Jordan:**

In this regard, we note that the Special Rapporteur had already made up his mind that there were secret prisons in Jordan being run by United States forces and that, as far as he was concerned, this was a certainty. Therefore, he treated the replies of security officials to his requests for clarification with contempt and incredulity, even though the officials assured him that there are no such centres in Jordan and that these are just allegations. As for the allegations concerning the persons whom the Special Rapporteur mentions as being held in Jordanian prisons, we should like to state the following:

- Salah Naser Salim Ali and Mohammed Faraj Ahmad Bashmila, both Yemeni nationals: their claims about being tortured in secret prisons run by United States forces in Jordan are baseless. The first-mentioned person (Salah) was arrested on 4 September 2005 because of his connection to Al-Qaeda and for entering the country on a forged passport bearing the name of his brother (Wadah Nasir Salim Ali). He was deported on 8 September 2005. The second-mentioned person (Mohammed) was brought back to the Department for questioning on 21 October 2003. He was then told to leave the country, which he did on 26 October 2003;

- Maher Irar, a Syrian national who also has Canadian nationality: there is nothing new to add to the information contained in the previous report on this subject;

- Sajidah Mubarak Atrus al-Rishawi, an Iraqi national: she was a member of a terrorist group that carried out suicide bombings at hotels in Amman on 9 November 2005, killing over 60 people and injuring hundreds of others. She was arrested based on information indicating that she was staying with a person in the town of Salt and had an explosive belt in her possession. The public prosecutor notified the State Security Court, which ordered the seizure of the explosive belt and the woman's arrest. From the very outset, the case was conducted under the authority and supervision of the Prosecutor-General, who conducted the questioning himself. It was at his request that she was placed in the detention centre of the General Intelligence Directorate. Her claims that she was tortured and threatened with rape are nothing but an attempt to obtain a lenient sentence from the court. On 12 December 2005, a delegation from the National Centre for Human Rights met with her. This meeting is mentioned in the 2005 report on the human rights situation in the Kingdom;

- Mundhir Abu Zahir and Marwan Ali Hamid: their allegations about being detained and tortured at the General Intelligence Directorate are false, since they have never been detained by the Directorate.

A/HRC/4/G/17
page 18

In this connection, we should like to affirm that the security forces at all levels investigate complaints of this kind in order to ensure respect for human rights and to punish anyone who takes it upon himself to infringe these rights. The following are just some examples of cases in which individuals were investigated and tried for committing acts amounting to torture or ill-treatment:

- Case of Zahir Abd al-Jalil Abu al-Rish: this man was arrested on 24 June 2006 on suspicion of having robbed the Hijazi and Gawsha food company in the Marka area and having stolen 100,000 dinars from the company's iron safe. (It should be mentioned that he had a previous record for robbery and other offences.) He was detained for further questioning. While he was being processed, two criminal investigators beat him, in breach of the strict instructions issued to all general security officers that they must not use coercion during questioning and must stick to lawful investigation methods when dealing with any kind of case. Zahir was sent for a medical examination and the initial medical report concluded that his general health was good and that he had not sustained any fractures or serious injuries. When questioned, he asked for no charges to be brought against the two culprits.

The commission of inquiry decided to refer the two culprits to the police court to be tried for:

- Conspiracy to wound, in violation of article 334 of the Criminal Code and pursuant to article 76 of the same Code;

- Disobeying orders and instructions, in violation of article 37, paragraph 4, of the General Security Act;

- With regard to prisoner Ramey Mohammed Najib al-Kirki: he was detained by the Amman public prosecutor on a robbery charge and has a criminal record (25 previous convictions). The police public prosecutor investigated his complaint;

- Prisoner Sami Abd al-Ra'uf Ahmad al-Ramhi was convicted of issuing bad cheques, and has a previous criminal record;

- Prisoner Hikmat Adnan Ibrahim Sarih is in detention on a robbery charge;

- Prisoner Marwan Ali Hamid has 72 previous convictions for forgery and deception;

- Khalid Sabah Ya`qub, Mahmud Walid and Ali Ahmad Abd al-Rahman al-Shawbki do not appear to have been held in correction centres; their names may not be correct (we need the prisoners' correct names).

As for the case of the deputies to which the report refers, it is worth noting that they were all released.

With regard to the allegations in the report that some inmates of detention, correction and rehabilitation centres have been tortured during interrogation, a serious and transparent investigation was conducted into these claims and allegations. It showed that most of the complaints were misleading and groundless and were the result either of fighting between the inmates concerned and other prisoners or of the security forces being constrained to use force to control certain prisoners resisting or assaulting them while attempting to make an arrest. These measures are consistent with the police's legal powers pursuant to article 9 of the General Security Act. In other cases, evidence was found of an attempt by complainants to plea in court that they had been tortured or ill-treated in order to avoid a conviction. In other cases again, after in-depth investigations had been carried out and evidence gathered from medical tests, the complaints were shown to be true and the security officers involved were referred to the courts for the infliction of appropriate and exemplary penalties. Members of the security services do not enjoy any form of immunity against criminal prosecution in respect of any offence, particularly torture and ill-treatment.

**Conclusion**

The Government takes a positive interest in the reports produced by most international and domestic human rights organizations. It views the opening of channels for dialogue and debate with these organizations as an important and necessary means of supporting the reform process on which the State has embarked with a view to the promotion and protection of human rights.

The Government should like to reassure the Special Rapporteur of its willingness to continue cooperation with him in full transparency and objectivity in order to promote, protect and develop human rights in Jordan. While the Government does not agree with most of the conclusions reached by the Special Rapporteur, it will give serious consideration to the recommendations in his final report - some recommendations have already been implemented - and will examine and decide on the other recommendations.

The Government should like to reaffirm its condemnation of all practices of torture and ill-treatment and its intention of imposing the highest penalties on any public official found guilty of torture and ill-treatment. The Government should also like to affirm its commitment to the Convention against Torture and all the human rights treaties to which Jordan is a party.

-----