# EXHIBIT U

**UNITED NATIONS**

A

 **General Assembly**

Distr.
GENERAL

A/HRC/4/40/Add.1
2 February 2007

ENGLISH
Original: ENGLISH/FRENCH/
SPANISH

HUMAN RIGHTS COUNCIL
Fourth regular session
Item 2 of the provisional agenda

## IMPLEMENTATION OF GENERAL ASSEMBLY RESOLUTION 60/251 OF 15 MARCH 2006 ENTITLED "HUMAN RIGHTS COUNCIL"

### Opinions adopted by the Working Group on Arbitrary Detention

The present document contains the Opinions adopted by the Working Group on Arbitrary Detention at its forty-fourth, forty-fifth and forty-sixth sessions, held in November 2005, May 2006 and August 2006, respectively. A table listing all the opinions adopted by the Working Group and statistical data concerning these opinions is included in the report of the Working Group to the Human Rights Council at its fourth regular session (A/HRC/4/40).

GE.07-10604  (E)    090307    160307

## CONTENTS

| Opinion | Page |
|---|---|
| No. 38/2005 (China) | 4 |
| No. 39/2005 (Cambodia) | 6 |
| No. 40/2005 (France) | 10 |
| No. 41/2005 (Tunisia) | 14 |
| No. 42/2005 (Colombia) | 19 |
| No. 43/2005 (China) | 20 |
| No. 44/2005 (Iraq and United States of America) | 24 |
| No. 45/2005 (Iraq and United States of America) | 27 |
| No. 46/2005 (Iraq and United States of America) | 34 |
| No. 47/2005 (Yemen) | 41 |
| No. 48/2005 (Namibia) | 45 |
| No. 1/2006 (Uzbekistan) | 48 |
| No. 2/2006 (Egypt) | 49 |
| No. 3/2006 (United Kingdom of Great Britain and Northern Ireland) | 49 |
| No. 4/2006 (Myanmar) | 50 |
| No. 5/2006 (Iraq and United States of America) | 52 |
| No. 6/2006 (Japan) | 52 |
| No. 7/2006 (Yemen) | 53 |
| No. 8/2006 (Libyan Arab Jamahiriya) | 53 |
| No. 9/2006 (Saudi Arabia) | 54 |
| No. 10/2006 (Algeria) | 55 |
| No. 11/2006 (China) | 59 |
| No. 12/2006 (Saudi Arabia) | 63 |

## CONTENTS (*continued*)

| Opinion | Page |
|---|---|
| No. 13/2006 (United Kingdom of Great Britain and Northern Ireland) | 65 |
| No. 14/2006 (Islamic Republic of Iran) | 70 |
| No. 15/2006 (Syrian Arab Republic) | 74 |
| No. 16/2006 (Syrian Arab Republic) | 76 |
| No. 17/2006 (Lebanon) | 82 |
| No. 18/2006 (Libyan Arab Jamahiriya) | 87 |
| No. 19/2006 (Islamic Republic of Iran) | 88 |
| No. 20/2006 (Gabon) | 90 |
| No. 21/2006 (Syrian Arab Republic) | 90 |
| No. 22/2006 (Cameroon) | 91 |
| No. 23/2006 (Qatar) | 94 |
| No. 24/2006 (Colombia) | 94 |
| No. 25/2006 (Romania) | 95 |
| No. 26/2006 (Islamic Republic of Iran) | 95 |
| No. 27/2006 (China) | 98 |
| No. 28/2006 (Uruguay) | 102 |
| No. 29/2006 (United States of America) | 103 |
| No. 30/2006 (Colombia) | 111 |
| No. 31/2006 (Iraq and United States of America) | 114 |

and redressed, if necessary by putting the perpetrators to justice. Yet, any procedure aiming to put right gross human rights violations, as such welcomed by the Working Group, shall scrupulously respect the rules and standards drawn up and accepted by the international community to respect the rights of any person charged of a criminal offence. The violation of the rights of the person charged may easily backfire. This is particularly true in the present case; any lack of respect for the rights of the leaders of the former regime in the criminal proceedings against them may undermine the credibility of the justice system of the newly emerging democratic Iraq.

39.    The Working Group believes that under the circumstances the proper way to ensure that the detention of Saddam Hussein does not amount to arbitrary deprivation of liberty would be to see to it that his trial is conducted by an independent and impartial tribunal in strict conformity with international human rights standards.

40.    On the basis of what precedes, the Opinion of the Working Group is that:

(a)    It will not take a position on the alleged arbitrariness of the deprivation of liberty of Mr. Saddam Hussein during the period of international armed conflict;

(b)    It will follow the development of the process and will request more information from both concerned Governments and from the source. In the meantime and referring to paragraph 17 (c) of its methods of work, it decides to keep the case pending until further information is received.

Adopted on 30 November 2005.

## OPINION No. 47/2005 (YEMEN)

**Communication:** addressed to the Government on 9 August 2005.

**Concerning:** Messrs. Walid Muhammad Shahir Muhammad al-Qadasi; Salah Nasser Salim'Ali and Muhammad Faraj Ahmed Bashmilah.

**The State is a party to the International Covenant on Civil and Political Rights.**

1.    (Same text as paragraph 1 of Opinion No. 38/2005.)

2    The Working Group conveys its appreciation to the Government for having forwarded the requisite information in good time.

3.    (Same text as paragraph 3 of Opinion No. 38/2005.)

4.    In the light of the allegations made, the Working Group welcomes the cooperation of the Government. The Working Group transmitted to the source the reply provided by the Government. The Working Group believes that it is in a position to render an Opinion on the facts and circumstances of the cases, in the context of the allegations made and the response of the Government thereto, as well as the observations by the source.

A/HRC/4/40/Add.1
page 42

5.   The source reports that Mr. Walid Muhammad Shahir Muhammad al-Qadasi, a citizen of Yemen, was arrested in the Islamic Republic of Iran in late 2001. He was held there for about three months before being handed over, with other detained foreign nationals, to the authorities in Afghanistan, who in turn handed them over to the custody of the United States of America. He was held in a prison in Kabul, where he was blindfolded, interrogated, threatened with death and accused of belonging to Al-Qaida. Walid Muhammad Shahir Muhammad al-Qadasi and his fellow detainees were kept in underground cells, 10 of them in a cell measuring approximately two by three metres, and constantly exposed to loud music. After three months in detention in Kabul, he was transferred to a detention centre of the United States military forces at Baghram Air Base, outside Kabul. After a month there, Walid Muhammad Shahir Muhammad al-Qadasi was taken to the United States military base at Guantánamo Bay, Cuba.

6.   Walid Muhammad Shahir Muhammad al-Qadasi was transferred from Guantánamo Bay to Yemen at the beginning of April 2004. On his arrival, he was detained in the Political Security Prison in Sana'a. He was denied access to a lawyer and not brought before a court. Walid Muhammad Shahir Muhammad al-Qadasi was visited in detention by representatives of the source in mid-April 2004. The prison staff informed the source that Walid Muhammad Shahir Muhammad al-Qadasi was under investigation and would be released as soon as the investigation was completed. Subsequently, he was transferred to Ta'iz prison, where a lawyer from the United States non-governmental organization Centre for Constitutional Rights met with him on 21 June 2005. He currently remains in detention there. He has not been charged with a criminal offence, nor been given the opportunity to challenge the legality of his detention. The Head of the Political Security Department in Sana'a informed the source that Walid Muhammad Shahir Muhammad al-Qadasi and other detainees who returned from Guantánamo Bay were being held at the request of the United States authorities and would remain detained in Yemen pending receipt of their files from these authorities for investigation.

7.   With regard to Mr. Salah Nasser Salim 'Ali, the source reports that he is a 27-year-old Yemeni citizen who lived in Jakarta until 19 August 2003. On that day he was detained in Jakarta by agents of the Indonesian police and taken to an immigration centre. After four days of detention, during which his passport expired, Salah Nasser Salim 'Ali was told that he would be deported to Yemen, via Jordan. Upon arrival at the airport in Amman, however, he was taken to a detention facility of the Jordanian intelligence service, where he was interrogated about a past stay in Afghanistan and tortured repeatedly for four days.

8.   As to Mr. Muhammad Faraj Ahmed Bashmilah, aged 37, the source reports that he is a Yemeni citizen, who also lived in Indonesia. In October 2003, he travelled to Jordan with his wife. On arrival at Amman airport, Jordanian immigration authorities took his passport. Three days later, on 19 October 2003, he was arrested by the Jordanian Da'irat al-Mukhabarat al-'Amah (General Intelligence Department, who kept him in custody for four days. During this period he was allegedly repeatedly tortured.

9.   The source further states that from detention in Jordan, Messrs. Salah Nasser Salim 'Ali and Muhammad Farah Ahmed Bashmilah were transferred to a detention centre under United States control. They were taken blindfolded to this detention centre by a several hours' long plane flight and detained underground, and are therefore not able to identify the location

of the detention centre. Both the forces in charge of transferring them thereto and those in charge of the detention centre were, however, from the United States. They were subsequently transferred, again blindfolded, by plane and helicopter, to a second detention centre under United States control. They are therefore not able to identify the location of the facility. In both places, the two men were interrogated about their activities in Afghanistan and Indonesia, and about their knowledge of other persons suspected of terrorist activities.

10. According to the source, Messrs. Salah Nasser Salim 'Ali and Muhammad Farah Ahmed Bashmilah were kept in United States custody for 20 and 18 months, respectively. During this period, they were held in solitary confinement and incommunicado, without contact with anyone other than the prison guards, interrogators and interpreters. Western music was piped into their cells uninterruptedly, 24 hours a day. In the second facility they were given books, including the Koran, and videos, and had an opportunity to exercise. Salah Nasser Salim 'Ali was visited by a doctor twice a month.

11. On or around 5 May 2005, without explanation, Muhammad Farah Ahmed Bashmilah and Salah Nasser Salim 'Ali were transferred to Yemen, where they were detained in the central prison of Aden. They were subsequently briefly taken to Sana'a and back to Aden. They are currently detained at the Fateh political security facility in Aden, where they have received visits by their family.

12. The source states that neither Muhammad Farah Ahmed Bashmilah nor Salah Nasser Salim 'Ali have been charged or tried with any offence, nor have they been informed of the reason for their continued detention. Representatives of the Yemeni authorities have told the source that the reason for their detention is that their transfer from United States detention was conditional upon them being held in Yemen.

13. According to the source, the detention of Walid Muhammad Shahir Muhammad al-Qadasi, Muhammad Farah Ahmed Bashmilah and Salah Nasser Salim 'Ali is devoid of any legal basis and thus arbitrary. In particular, the three above-mentioned persons were released from United States custody without charges and were never charged with any criminal offence in Yemen, where they have been detained for 18 months (Walid Muhammad Shahir Muhammad al-Qadasi) and three months (Muhammad Farah Ahmed Bashmilah and Salah Nasser Salim 'Ali), respectively. No decision concerning their detention and or statement setting forth the grounds therefor has been issued by any Yemeni authority. They have not been informed of any charges against them, have not been provided with legal assistance, have not had the right to challenge the lawfulness of their detention, and have not had a single hearing in their case.

14. The source adds that the detention of Walid Muhammad Shahir Muhammad al-Qadasi, Muhammad Farah Ahmed Bashmilah and Salah Nasser Salim'Ali is in violation of Yemeni domestic law, as well, because, according to it, suspects have the right to see a judge or prosecutor within 24 hours of being detained, the right to challenge the legal basis of their detention and the right to seek prompt legal assistance. Furthermore, Yemeni law provides that detention is not permitted except for acts punishable by law.

A/HRC/4/40/Add.1
page 44

15. In its reply to these allegations, the Government confirms that Messrs. Walid Muhammad Shahir Muhammad al-Qadasi, Muhammad Farah Ahmed Bashmilah and Salah Nasser Salim 'Ali were handed over to Yemen by the United States. They are held in a security police facility because of their alleged involvement in terrorist activities related to Al-Qaida. The Government of Yemen adds that the "competent authorities are still dealing with the case pending receipt of their [the persons'] files from the United States of America authorities in order to transfer them to the Prosecutor".

16. In replying to the Government's observations, the source informs that, as of 8 November 2005, the three men remain in detention, while the Government continues to state that it is awaiting the files concerning their cases from the United States authorities.

17. The Working Group, based on the above information provided by the source and the Government, which coincide, is in the position to render an Opinion.

18. The Government states that Messrs. Al-Qadasi, Bashmila and Salim were handed over to Yemen by the United States. It is waiting for the files from the American authorities so as to transfer them to the prosecutor. This clearly shows that the Yemen authorities do not currently have any files on them.

19. The Working Group notes with concern that the transfers that the three persons experienced before being detained in Yemen occurred outside the confines of any legal procedure, such as extradition, and do not allow the individuals access to counsel or to any judicial body to contest the transfers.

20. No charges have been made by the Government of Yemen against these three men. They have not been informed of any accusation against them, nor have been brought before any judicial authority. No legal procedure has been followed to accuse them. Their deprivation of liberty is, as such, devoid of any legal basis.

21. In the light of the foregoing, the Working Group renders the following Opinion:

> The deprivation of liberty of Messrs. Walid Muhammad Shahir Muhammad al-Qadasi, Muhammad Farah Ahmed Bashmilah and Salah Nasser Salim'Ali, is arbitrary, being in contravention of article 9 of the Universal Declaration of Human Rights, and article 9 of the International Covenant on Civil and Political Rights, and falls within category I of the categories applicable to the consideration of the cases submitted to the Working Group.

22. Consequent upon the Opinion rendered, the Working Group requests the Government:

> To release the three above-mentioned persons, or otherwise subject them to a competent judicial authority, bringing these cases in conformity with the standards and principles set forth in the International Covenant on Civil and Political Rights.

Adopted on 30 November 2005.