# EXHIBIT W

| | | |
|---|---|---|
| **UNITED NATIONS** | | **A** |



# General Assembly

Distr.
GENERAL

A/HRC/4/26/Add.1
15 March 2007

ENGLISH/FRENCH/SPANISH

HUMAN RIGHTS COUNCIL
Fourth session
Agenda item 2

# IMPLEMENTATION OF GENERAL ASSEMBLY RESOLUTION 60/251 OF 15 MARCH 2006 ENTITLED "HUMAN RIGHTS COUNCIL"

Report of the Special Rapporteur on the promotion and protection of human rights and fundamental freedoms while countering terrorism

Addendum

Communications with Governments[*]

---

[*] The present report is being circulated as received, in the languages of submission only, as it greatly exceeds the word limitation currently used by the relevant General Assembly resolution.

GE.07-11941

# CONTENTS

|  | *Paragraphs* | *Pages* |
|---|---|---|
| Introduction............................................................................ | 1-5 | 3 |
| **Summaries of communications transmitted, replies received and press releases issued** ............................................................. | 6-75 | 4 |
| Afghanistan............................................................................. | 6-7 | 4 |
| Algeria................................................................................... | 8-11 | 4 |
| Australia................................................................................ | 12-13 | 6 |
| Bahrain.................................................................................. | 14-17 | 7 |
| Chile...................................................................................... | 18-19 | 10 |
| China .................................................................................... | 20-21 | 12 |
| France.................................................................................... | 22-23 | 13 |
| Germany ............................................................................... | 24-25 | 13 |
| Indonesia............................................................................... | 26-27 | 14 |
| Israel ..................................................................................... | 28-32 | 15 |
| Jordan.................................................................................... | 33-36 | 18 |
| Kenya.................................................................................... | 37-38 | 21 |
| Kyrgyzstan ............................................................................ | 39-40 | 22 |
| Malaysia................................................................................ | 41 | 22 |
| Maldives................................................................................ | 42-43 | 23 |
| Mauritius............................................................................... | 44-45 | 24 |
| Morocco ............................................................................... | 46-47 | 25 |
| Pakistan................................................................................. | 48-50 | 27 |
| South Africa.......................................................................... | 51-52 | 28 |
| Tajikistan .............................................................................. | 53 | 29 |
| Thailand................................................................................ | 54-55 | 31 |
| Turkey................................................................................... | 56-60 | 32 |
| Uganda.................................................................................. | 61-62 | 34 |
| **United Kingdom of Great Britain and Northern Ireland** | 63-66 | 35 |

……………………
**United States of America**
…………………………………………….. 67-71  37
Uzbekistan ……………………………………………………….. 72-74  41
Yemen ……………………………………………………………… 75  41

A/HRC/4/26/Add.1
page 42

country visit, the Special Rapporteur would like to discuss these and other issues with relevant authorities, and he hopes that the Government will extend him an invitation in the very near future".

*Uzbekistan*

(a)     *Communications sent to the Government by the Special Rapporteur*

72. On 10 August 2006 the Special Rapporteur, together with the Special Rapporteur on freedom of religion or belief, drew the attention of the Government of Uzbekistan to information received concerning **legal amendments restricting the right to promote the bible outside prayer houses**. According to the information received, following a meeting of the heads of the main confessions organised by the Religious Affairs Department held on 28 July 2006, a number of changes to the criminal and administrative Codes were announced. In particular these changes provide that persons who promote the bible outside prayer houses should be fined, and, in case of repeated attempts, imprisoned. Also the "pastor" of the church to which the person belongs can be fined respectively punished. These punishments also apply if a person carries more than one bible since it is assumed that only one is needed for private use.

73. On 1 September 2006 the Special Rapporteur, jointly with the Special Rapporteur on extrajudicial, summary or arbitrary executions and the Special Rapporteur on freedom of religion and belief, drew the Government of Uzbekistan's attention to the case of Mr. **Mohammadrafiq Kamoluddin**, imam of a mosque in the city of Kara-Suu, Mr. Ayubkhodja Shahobidinov and Mr. Fathullo Rahimo (see paragraph 39). According to the information received, on 6 August 2006, the above-mentioned individuals were killed in the city of Osh as the result of an alleged counter terrorism operation, led by the National Security Service of Kyrgyzstan, in cooperation with the security forces of Uzbekistan. Reports indicated that these individuals were suspected members of the Islamic Movement of Uzbekistan and were planning to carry out a terrorist attack on the territory of the State of Uzbekistan. Other reports highlighted that it was not alleged that Mr. Mohammadrafiq Kamoluddin was a member of the Islamic Movement of Uzbekistan or that he was involved in the commission of terrorist acts. The Special Rapporteur requested the Government particularly on what basis it was decided to kill, rather than capture, these three individuals and to indicate legal basis for qualifying an individual or an entity as "terrorist" under the law of Uzbekistan.

(b)     *Communication from the Government*

74.     As at 31 January 2007, there had been no response to the Special Rapporteur's correspondence.

*Yemen*

(a)     *Communication from the Government*

75. By letter of 20 December 2005, the Government of Yemen replied to the Special Rapporteur's letter sent on 17 November 2005 (see paras. 28-30, E/CN.4/2006/98/Add.1). The Government informed that Mr. Salah Nasser Salim 'Ali and Mr. Muhammad Faraj Ahmed

Bashmilah stated, when questioned, that they had not been tortured by the Indonesian, Jordanian or United States of America authorities. Furthermore, the Government advised that the two men had not been arrested but rather handed over to the Yemeni authorities by the United States authorities after having been accused of being members of the organisation know as Al-Quaida. The Yemeni authorities detained the two individuals under the Code of Criminal Procedures No. 13 of 1994, with a view to questioning them and verifying the allegations made by the United States authorities. The Government indicated that steps were being taken to verify that the Department of Public Prosecutions had followed the proper legal procedures. Moreover, the Yemeni authorities received the files on the two individuals from the United States authorities on 10 November 2005. The Government stated that the legal procedures were being completed pending the arraignment against the two men before the courts. Finally, the Government indicated that, under the Prisons Act, detainees awaiting trial are legally entitled to access to medical treatment and rehabilitation programmes, whether at a detention centre or, if they have been convicted and sentenced to imprisonment, at a prison. Internal rules regulating and establishing the parameters for such treatments are being applied, the implementation of which is overseen by the Department of Public Prosecutions.

-----