STEVEN M. WATT* swatt@aclu.org
BEN WIZNER (SBN 215724) bwizner@aclu.org
JAMEEL JAFFER* jjaffer@aclu.org
STEVEN R. SHAPIRO* sshapiro@aclu.org
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10014
Tel. 212.549-2500 / Fax 212.549.2651

ANN BRICK (SBN 65296) abrick@aclunc.org
ACLU FOUNDATION OF
NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel. 415.621.2493 / Fax 415.255.1478

Additional Counsel Listed on Next Page

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| BINYAM MOHAMED;<br>ABOU ELKASSIM BRITEL;<br>AHMED AGIZA;<br>MOHAMED FARAG AHMAD BASHMILAH;<br>BISHER AL-RAWI,<br><br>    Plaintiffs,<br><br>v.<br><br>JEPPESEN DATAPLAN, INC.,<br><br>    Defendant. | Civil Action No. 5:07-cv-02798 (JW)<br><br>**DECLARATION OF MARGARET L. SATTERTHWAITE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO THE UNITED STATES' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT** |

CLIVE STAFFORD SMITH*† clivess@mac.com
ZACHARY KATZNELSON† (SBN 209489) zachary@reprieve.org.uk
REPRIEVE
PO Box 52742
London EC4P 4WS
England
Tel. +44 (0)207 353 4640 / Fax +44 (0)207 353 4641

PAUL HOFFMAN (SBN 71244) hoffpaul@aol.com
SCHONBRUN DESIMONE SEPLOW
HARRIS & HOFFMAN LLP
732 Ocean Front Walk, Suite 100
Venice, CA 90291
Tel 310.999.7040, ext. 4 / Fax 310.999.7040

HOPE METCALF* hope.metcalf@yale.edu
NATIONAL LITIGATION PROJECT
ALLARD K. LOWENSTEIN INTERNATIONAL
HUMAN RIGHTS CLINIC
YALE LAW SCHOOL
127 Wall Street
New Haven, CT 06520
Tel. 203.432.9404 / Fax 203.432.9128

MARGARET L. SATTERTHWAITE*++ satterth@juris.law.nyu.edu
INTERNATIONAL HUMAN RIGHTS CLINIC
WASHINGTON SQUARE LEGAL SERVICES, INC.
NEW YORK UNIVERSITY SCHOOL OF LAW
245 Sullivan Street
New York, NY 10012
Tel. 212-998-6657 / Fax 212-995-4031

**Attorneys for Plaintiffs BINYAM MOHAMED, ABOU ELKASSIM BRITEL, AHMED AGIZA, MOHAMED FARAG AHMAD BASHMILAH, and BISHER AL-RAWI**
* Admitted *Pro Hac Vice*
† Attorneys for and on behalf of Plaintiff BINYAM MOHAMED only
++ Attorney for and on behalf of Plaintiff MOHAMED FARAG AHMAD BASHMILAH only

I, MARGARET L. SATTERTHWAITE, under penalty of perjury, declare as follows, pursuant to 28 U.S.C. § 1746:

1. I am a licensed attorney and co-director of the International Human Rights Clinic at New York University School of Law. The International Human Rights Clinic is part of Washington Square Legal Services, Inc. ("WSLS"). WSLS was retained by Plaintiff Mohamed Farag Ahmad Bashmilah ("Mr. Bashmilah") in 2006 and I represent him as co-counsel in this action.

2. I submit this declaration in support of Plaintiffs' Opposition to the United States' Motion to Dismiss or, in the alternative, for Summary Judgment. Specifically, I submit this declaration to demonstrate the significant number of documents in the public domain regarding the apprehension, rendition and detention of Mr. Bashmilah as part of the Central Intelligence Agency's ("CIA") rendition program. These documents comprise, *inter alia*, reports published by non-governmental organizations concerning Mr. Bashmilah's case; documents published by inter-governmental bodies expressing concern about Mr. Bashmilah's treatment; and media reports concerning the rendition and detention of Mr. Bashmilah. This declaration does not discuss all of the documentation that has been made public concerning Mr. Bashmilah's experience. Instead, it gives a sense of the breadth and scope of the facts that are readily available in the public domain. With one exception, all of the documents cited here were published in English. I am aware that media outlets which publish in other languages, including Arabic, French, and Spanish, have published stories concerning Mr. Bashmilah as well.

3. Amnesty International ("AI") conducted several missions to Yemen in 2005 and 2006, in part to investigate the rendition and secret detention of Mr. Bashmilah. These missions resulted in a series of detailed reports that recount Mr. Bashmilah's experience within the

CIA rendition program. On August 4, 2005, while Mr. Bashmilah was still in detention in Yemen following his release from U.S. custody, AI issued a report documenting his experience in the CIA rendition program. Attached hereto as Exhibit A is a true and correct copy of Amnesty International, *USA/Jordan/Yemen: Torture and Secret Detention: Testimony of the "Disappeared" in the "War on Terror"* (Aug. 4, 2005), *available at* http://web.amnesty.org/library/index/engamr511082005.

4. Following the release of AI's August 2005 report, a variety of media outlets reported on Mr. Bashmilah's experience as revealed in the report. Attached hereto as Exhibit B are true and correct copies of the following newspaper or internet news articles discussing Mr. Bashmilah:

   i. *US Challenged Over 'Secret Jails,'* BBC NEWS, (Aug. 4, 2005), *available at* http://news.bbc.co.uk/2/hi/americas/4743485.stm;

   ii. David Mark, *US Torturing Detainees in Secret Locations: Amnesty*, ABC PREMIUM NEWS, (Aug. 4, 2005), *available at* http://www.abc.net.au/news/stories/2005/08/04/1429783.htm;

   iii. Michelle Faul, *Report says U.S. Held Two Yemeni Prisoners in Secret Underground Jail*, ASSOCIATED PRESS, (Aug. 3, 2005); *reprinted as Report says U.S. secretly held two prisoners*, USA TODAY, (Aug. 3, 2005), *available at* http://www.usatoday.com/news/world/2005-08-03-secret-detainees_x.htm; *Two Yemeni Men Claim Secret Detention,* FOX NEWS.COM, (Aug. 4, 2005), *available at* http://www.foxnews.com/story/0,2933,164697,00.html;

   iv. Richard Norton-Taylor, *Detainees 'deprived of daylight,'* THE GUARDIAN, (Aug. 4, 2005), *available at* http://www.guardian.co.uk/usa/story/0,12271,1542082,00.html; and

      v. *Amnesty Decries US Secret Detentions,* ALJAZEERA.NET, (Aug. 4, 2005), *available at* http://english.aljazeera.net/English/archive/archive?ArchiveId=13914.

5. On November 8, 2005, Amnesty International released a follow-up report detailing Mr. Bashmilah's story and further discussing his detention in CIA "black site" facilities. Attached hereto as Exhibit C is a true and correct copy of relevant excerpts from Amnesty International, *USA / Yemen: Secret Detention in CIA "Black Sites"* (Nov. 8, 2005), *available at* http://web.amnesty.org/library/pdf/AMR511772005ENGLISH/$File/AMR5117705.pdf.

6. A variety of media outlets reported on the findings concerning Mr. Bashmilah contained in AI's November 2005 report. Attached hereto as Exhibit D are true and correct copies of the following newspaper and internet news articles:

    i. Josh White, *Prisoner Accounts Suggest Detention At Secret Facilities; Rights Group Draws Link to the CIA,* WASH. POST, (Nov. 7, 2005);

    ii. Tito Drago, *Human Rights-US: Exporting Torture,* IPS-INTER PRESS SERVICE, (Nov. 9, 2005), *available at* http://ipsnews.net/news.asp?idnews=30951; and

    iii. Ian Cobain, *Seized, Held, Tortured: Six Tell Same Tale,* THE GUARDIAN, (Dec. 6, 2005), *available at* http://www.guardian.co.uk/international/story/0,,1658934,00.html, *reprinted as We Were Tortured,* THE MIRROR, (Dec. 7, 2005), *available at* http://www.mirror.co.uk/archive/2005/12/07/we-were-tortured-89520-16455120/.

7. On April 5, 2006, Amnesty International issued a report further detailing the U.S. program of extraordinary rendition, documenting flight patterns associated with the rendition program, and summarizing a number of cases of rendition, including that of Mr. Bashmilah. Specifically, the report included information on the Gulfstream jet registered

- 3 -

with the Federal Aviation Administration as N379P. This is the plane that WSLS later determined transferred Mr. Bashmilah from Amman, Jordan to Kabul, Afghanistan on October 26, 2003, and which was operated by Jeppesen Dataplan, Inc., Defendant in this action. The report also revealed the role of private companies and aircraft within the CIA rendition program. Attached hereto as Exhibit E is a true and correct copy of relevant excerpts from Amnesty International, *USA/Jordan/Yemen: Below the Radar: Secret Flights to Torture and "Disappearance,"* (Apr. 5, 2006), *available at* http://web.amnesty.org/library/Index/ENGAMR510512006?open&of=ENG-USA.

8. A variety of media outlets reported on the findings concerning Mr. Bashmilah contained in this report. Attached hereto as Exhibit F are true and correct copies of the following newspaper and internet news articles:

  i. Scott Shane and Margot Williams, *Yemenis Freed After Transfer From Secret Prisons, Report Says*, NEW YORK TIMES, (Apr. 5, 2006), *available at* http://www.nytimes.com/2006/04/05/world/middleeast/05detain.html;

  ii. Josh White, *3 U.S.-Detained Yemenis Freed, Rights Group Says*, WASH. POST, (Apr. 6, 2006), *available at* http://www.washingtonpost.com/wp-dyn/content/article/2006/04/05/AR2006040502100.html;

  iii. Richard Norton-Taylor, *Amnesty demands public inquiry on rendition flights*, THE GUARDIAN, (Apr. 5, 2006), *available at* http://www.guardian.co.uk/humanrights/story/0,,1746826,00.html;

  iv. Andrew Buncombe, *Revealed: The plight of prisoners caught up in US rendition*, THE INDEPENDENT, (Apr. 5, 2006), *available at* http://news.independent.co.uk/world/americas/article355817.ece;

Declaration of Margaret L. Satterthwaite C 07-2798-JW

v. Daniel Dombey and Demetri Sevastopulo, *Amnesty links rendition flights with torture,* FINANCIAL TIMES (Apr. 5, 2006), *available at* http://www.ft.com/cms/s/0/81444c16-c400-11da-bc52-0000779e2340.htmlt;

vi. *CIA Exploited Aviation Practices to Unlawfully Transfer Detainees to Countries that Torture, According to New Amnesty Int'l. Report,* P.R. NEWSWIRE, (Apr. 4, 2006);

vii. *U.K.: Rendition report prompts probe calls,* UNITED PRESS INTERNATIONAL, (Apr. 5, 2006);

viii. *Amnesty Asks if CIA Held Yemenis in Djibouti, Afghanistan, and East Europe,* AGENCE FRANCE PRESSE, (Apr. 5, 2006);

ix. Ruadhán Mac Cormaic, *'Rendition' Aircraft used Irish Airports – Amnesty,* THE IRISH TIMES, (Apr. 5, 2006), *available at* http://www.ireland.com/newspaper/world/2006/0405/1142365531244.html;

x. Jennifer Quinn, *'Black Site' prisons may have been in Eastern Europe; Yemeni detainees detail accounts of journeys that may have been secret CIA flights,* THE HOUSTON CHRONICLE, (Apr. 5, 2006), *available at* http://www.chron.com/CDA/archives/archive.mpl?id=2006_4092264;

xi. *Yemeni rendition prisoners shed light on secret CIA incarceration,* BELFAST TELEGRAPH, (Apr. 5, 2006);

xii. *Amnesty report probes CIA jails,* ALJAZEERA.NET, (April 6, 2005), *available at* http://english.aljazeera.net/English/archive/archive?ArchiveId=21766; and

xiii. Nat Hentoff, *CIA Secret Prisons Exposed: The disappeared: Are they dead? Are they alive? Ask Congress. Ask the President.,* THE VILLAGE VOICE,

Declaration of Margaret L. Satterthwaite C 07-2798-JW

(May 7, 2006), *available at*

http://www.villagevoice.com/news/0619,hentoff,73121,6.html.

9. On June 12, 2006, the Parliamentary Assembly Committee on Legal Affairs and Human Rights of the Council of Europe published a report on the U.S program of extraordinary rendition. This report followed an investigation conducted during a period of several months by Committee Rapporteur Dick Marty that examined the complicity of European nations in the CIA rendition program. This report documented Mr. Bashmilah's experience and reported Amnesty International's belief that he was held "somewhere in eastern Europe" before being returned to Yemen on May 5, 2005 following a seven hour flight. Council of Europe Parliamentary Assembly Committee on Legal Affairs and Human Rights (Rapporteur Dick Marty), *Alleged Secret Detentions and Unlawful Interstate Transfers Involving Council of Europe Member States*, (June 12, 2006), at 41, *available at* http://assembly.coe.int/Documents/WorkingDocs/doc06/edoc10957.pdf; relevant pages attached hereto as Exhibit G.

10. The findings of the Council of Europe's 2006 report were widely reported in the media. Several media outlets referenced Mr. Bashmilah in this connection. Attached hereto as Exhibit H are true and correct copies of the following newspaper and internet news articles that discuss Mr. Bashmilah:

   i. Paul Reynolds, *Rendition and the rights of the individual*, BBC NEWS, (June 7, 2006), *available at* http://news.bbc.co.uk/2/hi/europe/5055872.stm;

   ii. *'Terror Flight' inquiry uncovers collusion*, THE TIMES (LONDON), (June 7, 2006), *available at* http://business.timesonline.co.uk/tol/business/law/public_law/article672484.ece; and

  iii. *European governments collaborated with US on renditions: Report*, AGENCE FRANCE PRESSE, (June 6, 2006).

11. On October 21, 2007, the leading Danish newspaper, *Politiken*, reported that the Gulfstream jet registered as N379P crossed Danish airspace before collecting Mr. Bashmilah from Amman, Jordan and transferring him to Kabul, Afghanistan. The report details Mr. Bashmilah's experience in the CIA's extraordinary rendition program. Attached hereto as Exhibit I is a true and correct copy of Claus Blok Thomsen, *Torturflyet*, POLITIKEN, (Oct. 21, 2007).

  i. Following the revelations published in *Politiken* concerning the passage through Danish airspace of the plane that later rendered Mr. Bashmilah to Afghanistan, Amnesty International published a press release calling on the Danish authorities to initiate an investigation. Attached hereto as Exhibit J is a true and correct copy of Amnesty International, *Denmark: Authorities Must Come Clean about Renditions*, (Oct. 23, 2007), *available at* http://web.amnesty.org/library/index/engEUR180032007.

  ii. The *Malaysia Sun* reported on the allegations concerning Mr. Bashmilah's rendition in an article published on October 31, 2007. Attached hereto as Exhibit K is a true and correct copy of *Denmark latest European government to duck rendition probe*, MALAYSIA SUN, (Oct. 31, 2007), *available at* http://story.malaysiasun.com/index.php/ct/9/cid/b8de8e630faf3631/id/295991/cs/1/.

12. Information about Mr. Bashmilah's experience in the U.S. rendition program has been reported by the media on several other occasions. Attached hereto as Exhibit L are true and correct copies of the following newspaper and internet news articles:

- 7 -

    i. Stephen Grey, *Missing presumed tortured*, NEW STATESMAN, (Nov. 20, 2006), *available at* http://www.newstatesman.com/200611200014 (commenting on Mr. Bashmilah's rendition and detention by the U.S. government in Afghanistan and later in a "black site" prison); and

    ii. Adnan Siddiqui and Victoria Brittain, *Pinochet is gone, but his methods are still with us*, THE GUARDIAN, (Dec. 13, 2006), *available at* http://www.guardian.co.uk/chile/story/0,,1970915,00.html (reporting on Mr. Bashmilah's experience in a U.S.-run "black site" prison).

13. The United Nations ("U.N.") has on a number of occasions publicly expressed concern about the treatment that Mr. Bashmilah suffered as part of the U.S. rendition program. Several U.N. entities have issued public reports or opinions referencing concern about Mr. Bashmilah's treatment and have engaged in correspondence with the governments involved in Mr. Bashmilah's apprehension, rendition, and detention. These reports and correspondence make publicly available key facts concerning Mr. Bashmilah's experience. Attached hereto as Exhibits M through S are true and correct copies of relevant excerpts from the U.N. documents summarized below.

14. The U.N. Special Rapporteur on the Promotion and Protection of Human Rights and Fundamental Freedoms while Countering Terrorism, Professor Martin Scheinin, together with the U.N. Special Rapporteur on Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Professor Manfred Nowak, communicated with several countries concerning Mr. Bashmilah, relaying the facts regarding abuses that he suffered during his rendition and secret detention and requesting an official response. On December 23, 2005, Special Rapporteur Scheinin submitted a report to the United Nations Commission on Human Rights detailing these communications. Attached hereto as Exhibit M is a true and

correct copy of relevant excerpts from the Report of the Special Rapporteur on the Promotion and Protection of Human Rights and Fundamental Freedoms while Countering Terrorism, Addendum, Communications with Governments (2005). The report documents the following joint communications from Special Rapporteur Scheinin and Special Rapporteur Nowak to the governments of Indonesia, Jordan, the United States, and Yemen:

i. **Indonesia** - On November 18, 2005, in a letter to the government of Indonesia, the two Special Rapporteurs posed "specific questions concerning the legal basis for the detention procedures to ensure that [Mohamed Bashmilah and another detainee] had recourse to judicial review of the lawfulness of their detention and the applicable legal basis for measures referring to 'terrorism'." The Special Rapporteurs requested a response by January 14, 2006. *Id.* at paras. 3-4.

ii. **Jordan** - On November 17, 2005, in a letter to the government of Jordan, the two Special Rapporteurs drew the government's attention to information they received alleging that Mohamed Bashmilah had been tortured by officials in Jordan. The Special Rapporteurs posed "specific questions concerning the legislation in Jordan, e.g. on the legal basis for the detention procedures to ensure that detainees have recourse to judicial review of the lawfulness of their detention, and the applicable legal basis for measures referring to 'terrorism,'" and requested a response by January 14, 2006. *Id.* at paras. 5-8.

iii. **United States** - On November 17, 2005, the two Special Rapporteurs asked the U.S. government to respond to specific allegations concerning Mr. Bashmilah's experience in U.S. custody, calling to the attention of the U.S. government allegations that he had been held incommunicado for an extended period in several

Declaration of Margaret L. Satterthwaite C 07-2798-JW

different U.S.-run detention centers. The Special Rapporteurs requested a response by January 14, 2006. *Id.* at paras. 22-23.

 iv. **Yemen** - On November 17, 2005, in a letter to the government of Yemen, the two Special Rapporteurs called to the government's attention information they had received concerning Mr. Bashmilah's transfer from U.S. custody to detention in Yemen. The Special Rapporteurs posed "specific questions concerning the legislation in Yemen referring to 'terrorism', and about the legal basis for the detention procedures to ensure that detainees had recourse to judicial review of the lawfulness of their detention." The Special Rapporteurs requested a response by January 14, 2006. *Id.* at paras. 28-30.

15. The Special Rapporteur on Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment published a report dated March 21, 2006 that referenced a letter he received from the government of Yemen in response to the communication outlined above in para. 14(iv). This letter, dated December 20, 2005, explained that Mr. Bashmilah had been transferred to the custody of the government of Yemen by the U.S. government. Special Rapporteur Nowak's summary of the letter explains that the government of Yemen stated that Mr. Bashmilah was "not arrested but rather [was] handed over to them by the United States authorities" after having been accused of being a member of Al-Qaeda." The report further states that the letter explained that "The Yemeni authorities detained [him] under the Code of Criminal Procedures with a view to questioning [him] and verifying the allegations made by the US authorities. The Yemeni authorities received the files on [Mr. Bashmilah and another detainee] from the US authorities on 10 November 2005, and the legal procedures are being completed pending their arraignment before the courts." Attached hereto as Exhibit N is a true and correct copy of the Report of the Special

Rapporteur on Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Manfred Nowak, Addendum, Summary of information, including individual cases, transmitted to Governments and replies received (letter summarized at 340-341). *See also* attached hereto as Exhibit O a true and correct copy of relevant excerpts from the Report of the Special Rapporteur on the Promotion and Protection of Human Rights and Fundamental Freedoms while Countering Terrorism, Addendum, Communications with Governments (2007) (summarizing the same letter at para. 75).

16. On January 5, 2007, the Special Rapporteur on Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment published a report concerning a mission to Jordan that he undertook from June 25 to 29, 2006. Attached hereto as Exhibit P is a true and correct copy of the Report of the Special Rapporteur on Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Manfred Nowak, Addendum, Mission to Jordan. In this report, the Special Rapporteur noted that Jordan "has repeatedly been mentioned in relation to the practice by the United States of America of 'extraordinary renditions.'" *Id.* at para. 43. The Special Rapporteur stated that he had received "credible evidence" demonstrating that Mr. Bashmilah was held by the U.S. government in cooperation with the government of Jordan. *Id.* The Rapporteur included in his report a passage drawn from a letter he received from the government of Jordan dated January 18, 2006, in which the government confirmed that Mr. Bashmilah "was brought in to the [General Intelligence] Department for questioning on 21 October 2003." *Id.* at n. 10. However, the government of Jordan refuted the allegations regarding Mr. Bashmilah's detention; the Special Rapporteur summarized the government's response on this point as follows: Jordan claimed that "the allegations are false as there is no record showing that Mr. Bashmilah and one other detainee] had been arrested for [. . .] violations of either the

penal, disciplinary or administrative codes." *Id.* Further, the Special Rapporteur explained that the government of Jordan stated that it did not possess any files indicating that Mr. Bashmilah posed a security threat.

17. On March 15, 2007, the Special Rapporteur on the Promotion and Protection of Human Rights and Fundamental Freedoms while Countering Terrorism published a report that includes a summary of the same letter, written by the government of Jordan on January 18, 2006, described in para. 16 above. Attached hereto as Exhibit Q is a true and correct copy of relevant excerpts from the Report of the Special Rapporteur on the Promotion and Protection of Human Rights and Fundamental Freedoms while Countering Terrorism, Addendum, Communications with Governments (2007) (letter summarized at para. 34).

18. On March 22, 2007, in a *Note Verbale* to the United Nations Office of the High Commissioner for Human Rights, the Permanent Mission of Jordan to the United Nations Office at Geneva provided another response to allegations concerning the ill-treatment of Mr. Bashmilah. In this communication, the government of Jordan stated that Mr. Bashmilah "was brought back to the [General Intelligence] Department for questioning on 21 October 2003… He was then told to leave the country, which he did on 26 October 2003." Attached hereto as Exhibit R is a true and correct copy of the *Note Verbale* from the Permanent Mission of Jordan to the United Nations Office of Geneva addressed to the Office of the High Commissioner for Human Rights.

1. On November 30, 2005, the United Nations Working Group on Arbitrary Detention ("Working Group") issued its Opinion No. 47/2005 concerning the detention of Mr. Bashmilah. Attached hereto as Exhibit S is a true and correct copy of the United Nations Working Group on Arbitrary Detention Opinion 47/2005.

- 12 -

19. This Opinion was issued while Mr. Bashmilah was still in custody in Yemen. The Working Group explained that the government of Yemen confirmed that Mr. Bashmilah was "handed over to Yemen by the United States...[t]he Government of Yemen add[ed] that the 'competent authorities are still dealing with the case pending receipt of [the] files [concerning Mr. Bashmilah] from the United States of America authorities in order to transfer them to the Prosecutor.'" *Id.* at para. 15. In its Opinion, the Working Group made three important points concerning Mr. Bashmilah:

  i. The Working Group noted that Mr. Bashmilah's transfers before he was returned to Yemen were accomplished "outside the confines of any legal procedure," noting that he therefore was not given "access to counsel or to any judicial body to contest the transfers." *Id.* at para. 19.

  ii. The Working Group found that the Yemeni government detained Mr. Bashmilah without a legal basis and that the detention was therefore arbitrary. The Working Group opined that the government of Yemen was in violation of article 9 of the Universal Declaration of Human Rights and article 9 of the International Covenant on Civil and Political Rights, which both guarantee that no one shall be subject to arbitrary detention. *Id.* at para. 21.

  iii. The Working Group requested that the government of Yemen either release Mr. Bashmilah or bring him before a competent judicial authority. *Id.* at para. 22.

*****

I hereby declare under penalty of perjury that the foregoing is true and correct. Executed this 11th day of Dec. 2007.

Margaret L. Satterthwaite