1  STEVEN M. WATT* swatt@aclu.org
   BEN WIZNER (SBN 215724) bwizner@aclu.org
2  JAMEEL JAFFER* jjaffer@aclu.org
   STEVEN R. SHAPIRO* sshapiro@aclu.org
3  AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION
4  125 Broad Street, 18th Floor
   New York, NY 10014
5  Tel. 212.549-2500 / Fax 212.549.2651

6  ANN BRICK (SBN 65296) abrick@aclunc.org
   ACLU FOUNDATION OF
7  NORTHERN CALIFORNIA
   39 Drumm Street
8  San Francisco, CA 94111
   Tel. 415.621.2493 / Fax 415.255.1478

10 Additional Counsel Listed on Next Page

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BINYAM MOHAMED;<br>ABOU ELKASSIM BRITEL;<br>AHMED AGIZA;<br>MOHAMED FARAG AHMAD BASHMILAH;<br>BISHER AL-RAWI,<br><br>Plaintiffs,<br><br>v.<br><br>JEPPESEN DATAPLAN, INC.,<br><br>Defendant. | Civil Action No. 5:07-cv-02798 (JW)<br><br>**DECLARATION OF CLIVE-STAFFORD SMITH IN SUPPORT OF PLAINTIFFS' OPPOSITION TO THE UNITED STATES' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT** |

Declaration of Clive Stafford Smith - C 07-2798-JW

CLIVE STAFFORD SMITH*† clivess@mac.com
ZACHARY KATZNELSON† (SBN 209489) zachary@reprieve.org.uk
REPRIEVE
PO Box 52742
London EC4P 4WS
England
Tel. +44 (0)207 353 4640 / Fax +44 (0)207 353 4641

PAUL HOFFMAN (SBN 71244) hoffpaul@aol.com
SCHONBRUN DESIMONE SEPLOW
HARRIS & HOFFMAN LLP
732 Ocean Front Walk, Suite 100
Venice, CA 90291
Tel 310.999.7040, ext. 4 / Fax 310.999.7040

HOPE METCALF* hope.metcalf@yale.edu
NATIONAL LITIGATION PROJECT
ALLARD K. LOWENSTEIN INTERNATIONAL
HUMAN RIGHTS CLINIC
YALE LAW SCHOOL
127 Wall Street
New Haven, CT 06520
Tel. 203.432.9404 / Fax 203.432.9128

MARGARET L. SATTERTHWAITE*++ satterth@juris.law.nyu.edu
INTERNATIONAL HUMAN RIGHTS CLINIC
WASHINGTON SQUARE LEGAL SERVICES, INC.
NEW YORK UNIVERSITY SCHOOL OF LAW
245 Sullivan Street
New York, NY 10012
Tel. 212-998-6657 / Fax 212-995-4031

**Attorneys for Plaintiffs BINYAM MOHAMED, ABOU ELKASSIM BRITEL, AHMED AGIZA, MOHAMED FARAG AHMAD BASHMILAH, and BISHER AL-RAWI**
**\* Admitted Pro Hac Vice**
**† Attorneys for and on behalf of Plaintiff BINYAM MOHAMED only**
**++ Attorney for and on behalf of Plaintiff MOHAMED FARAG AHMAD BASHMILAH only**

I, **CLIVE-STAFFORD SMITH**, of, London, England under penalty of perjury under the laws of the United States of America, declare as follows, pursuant to 28 U.S.C. § 1746:

1. I am co-counsel for Plaintiff Binyam Mohamed in this action and make this Declaration on his behalf in support of Plaintiffs' Opposition to the United States Motion to Dismiss, or in the alternative Summary Judgment.

2. I also represent Mr. Mohamed in habeas corpus proceedings pending before the district court in the District of Columbia seeking review of his detention by the United States government at Guantánamo Bay Naval Station, Cuba, and as civilian counsel in military commissions proceedings that were previously initiated against him.

3. In my capacity as Mr. Mohamed's counsel, I have met with him at Guantánamo on numerous occasions. During my many meetings with him, Mr. Mohamed provided me with a detailed account of his initial detention in Pakistan in 2002; his rendition from Pakistan to Morocco by the Central Intelligence Agency in 2002; his eighteen months of arbitrary detention and brutal torture by agents of the Moroccan government in Tamara prison; his rendition by the CIA to CIA-run prisons in Afghanistan, including the "Dark Prison" and the Bagram Air Base, and his torture and other abuse at these facilities; and finally, his transfer from Afghanistan to Guantánamo. I took copious notes of our conversations and obtained clearance from the U.S. government to make a typed version of various aspects of these notes public. Attached hereto as Exhibit A is a true and correct copy of the de-classified account of Mr. Mohamed's rendition and torture in Morocco and Afghanistan.

Declaration of Clive Stafford Smith - C 07-2798-JW

4. Mr. Mohammed's detailed and graphic account of his rendition and torture by agents of the Moroccan and United States' governments has been addressed by numerous official inquiries at the inter-governmental and national level. On no occasion to my knowledge has any evidence ever been offered, or come to light, contesting any aspect of his story.

5. The European Parliament and Council of Europe both have conducted inquiries and published reports on the alleged use of European nations by the CIA for secret detention and unlawful inter-state transfer of prisoners. Through testimony, flight plans submitted to Eurocontrol, the inter-governmental agency responsible for air traffic control in Europe, and other information, both regional inquires substantiate Mr. Mohamed's account of his rendition from Morocco to Afghanistan.

6. Based on its examination of flight records, the European Parliament found that Mr. Mohamed "underwent two 'extraordinary renditions' in the space of 18 months….."; one from Pakistan to Rabat, Morocco on July 21, 2002, and the second, on January 22, 2004 from Rabat to Kabul, Afghanistan. The European Parliament's report also notes the admission of "former UK Secretary of State for Foreign and Commonwealth Affairs, Jack Straw, [….] in December 2005 that UK intelligence officials met Binyam Mohamed when he was arrested in Pakistan." Attached hereto as Exhibit B is a true and correct copy of the sections of the European Parliament report relative to Mr. Mohamed, *available at* http://www.europarl.europa.eu/comparl/tempcom/tdip/final_report_en.pdf.

7. In its 2006 report, the Council of Europe also corroborates Mr. Mohamed's version of his rendition. Referencing the same flight records as the European Parliament, the Council of Europe noted in relation to the second rendition flight that: "The aircraft N313P, operated on behalf of the CIA, is shown in my official data to have flown from Rabat to Kabul in the early hours of 22 January 2004. Two days later, as part of the same circuit, the same plane flew back to Europe and was used in the rendition of Khaled El-Masri." Attached hereto as Exhibit C is a true and correct copy of the sections of the Council of Europe report relative to Mr. Mohamed's rendition together with associated flight records, *available at* http://assembly.coe.int/CommitteeDocs/2006/20060606_Ejdoc162006PartII-FINAL.pdf.

8. Jeppesen's involvement in Mr. Mohamed's second rendition flight is confirmed by a telex communication between Jeppesen and its agent in Mallorca, Spain, Mallorcair, obtained by a Spanish Prosecutor in the course of a criminal investigation in to the use of Mallorca airport by the CIA as a "staging-post" for CIA rendition flights. In the telex, Jeppesen requests Mallorcair to provide ground handling services and pay airport fees for a Boeing business jet registered as N313P from January 25, 2004 through January 27, 2004. Attached hereto as Exhibit D is a link to the true and correct copy of the telex communication, *available at* http://www.ghostplane.net/elmasri.

9. In a statement to Spanish police in the course of the aforementioned criminal investigation, Mallocair confirmed receipt of instructions from Jeppesen. Attached

3

hereto as Exhibit E is a true and correct excerpt of the statement obtained from Mallocair together with an unofficial English translation thereof, *available at* http://www.ghostplane.net/elmasri.

10. Most recently, part of Mr. Mohamed's account of his rendition has been corroborated by a Parliamentary inquiry in the United Kingdom. In the course of the inquiry, conducted by the UK Security and Intelligence Committee, the Committee members "considered whether the UK intelligence and security Agencies had any knowledge of and/or involvement in, rendition operations (including specific cases), and their overall policy for intelligence sharing with foreign liaison services (principally the United States) in this context."

11. Specifically, in their consideration of Mr. Mohamed's case, the Committee noted that "A member of the [UK] Security Service [] interview[ed] [Mr. Mohamed] once, for approximately three hours, while he was detained in Karachi in 2002" and that "[the Security Service] were aware of the U.S. plan to transfer him." The Committee concluded that: "There is a reasonable probability that intelligence passed to the Americans was used in [Mr. Mohamed's] subsequent interrogation." Attached hereto as Exhibit F is a true and correct copy of relevant extracts of the Committee's report dated July, 2007, *available at* http://www.cabinetoffice.gov.uk/upload/assets/www.cabinetoffice.gov.uk/publications/intelligence/20070725_isc_final.pdf.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of Dec 2007.

Clive Stafford Smith

5

Declaration of Clive Stafford Smith - C 07-2798-JW