STEVEN M. WATT* swatt@aclu.org
BEN WIZNER (SBN 215724) bwizner@aclu.org
JAMEEL JAFFER* jjaffer@aclu.org
STEVEN R. SHAPIRO* sshapiro@aclu.org
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10014
Tel. 212.549.2500 / Fax 212.549.2651

ANN BRICK (SBN 65296) abrick@aclunc.org
ACLU FOUNDATION OF
NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel. 415.621.2493 / Fax 415.255.1478

Additional Counsel Listed on Next Page

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| **BINYAM MOHAMED;**<br>**ABOU ELKASSIM BRITEL;**<br>**AHMED AGIZA;**<br>**MOHAMED FARAG AHMAD**<br>**BASHMILAH;**<br>**BISHER AL-RAWI,**<br><br>    **Plaintiffs,**<br><br>    v.<br><br>**JEPPESEN DATAPLAN, INC.,**<br><br>    **Defendant.** | **Civil Action No. 5:07-cv-02798 (JW)**<br><br>**DECLARATION OF SEAN BELCHER IN SUPPORT OF PLAINTIFFS' OPPOSITION TO THE UNITED STATES' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT** |

CLIVE STAFFORD SMITH*† clivess@mac.com
ZACHARY KATZNELSON† (SBN 209489) zachary@reprieve.org.uk
REPRIEVE
PO Box 52742
London EC4P 4WS
England
Tel. +44 (0)207 353 4640 / Fax +44 (0)207 353 4641

PAUL HOFFMAN (SBN 71244) hoffpaul@aol.com
SCHONBRUN DESIMONE SEPLOW
HARRIS & HOFFMAN LLP
732 Ocean Front Walk, Suite 100
Venice, CA 90291
Tel 310.999.7040, ext. 4 / Fax 310.999.7040

HOPE METCALF* hope.metcalf@yale.edu
NATIONAL LITIGATION PROJECT
ALLARD K. LOWENSTEIN INTERNATIONAL
HUMAN RIGHTS CLINIC
YALE LAW SCHOOL
127 Wall Street
New Haven, CT 06520
Tel. 203.432.9404 / Fax 203.432.9128

MARGARET L. SATTERTHWAITE*++ satterth@juris.law.nyu.edu
INTERNATIONAL HUMAN RIGHTS CLINIC
WASHINGTON SQUARE LEGAL SERVICES, INC.
NEW YORK UNIVERSITY SCHOOL OF LAW
245 Sullivan Street
New York, NY 10012
Tel. 212-998-6657 / Fax 212-995-4031

**Attorneys for Plaintiffs BINYAM MOHAMED, ABOU ELKASSIM BRITEL, AHMED AGIZA, MOHAMED FARAG AHMAD BASHMILAH, and BISHER AL-RAWI**
**\* Admitted Pro Hac Vice**
**† Attorneys for and on behalf of Plaintiff BINYAM MOHAMED only**
**++ Attorney for and on behalf of Plaintiff MOHAMED FARAG AHMAD BASHMILAH only**

DECLARATION OF SEAN BELCHER

I, Sean Belcher, declare:

1.    I have personal knowledge of the facts set forth herein and, if called as a witness, could competently testify to them in a court of law.  The facts set forth herein are confirmed by notes that I made shortly after the events in question.

2.    From July 17, 2006 until August 21, 2006, I was employed as a technical writer at Jeppesen Data Plan ("Jeppesen"), in San Jose, California.

3.    On Friday, August 11, 2006, after I had been at Jeppesen for about four weeks, I attended a "Breakfast Club" meeting for new employees held at the Jeppesen San Jose office.  At the meeting we were given a welcome and an informational talk by Bob Overby, the director of Jeppesen International Trip Planning Service.

4.    In his talk, Mr. Overby provided some company history and descriptions of the company's services, acquisitions, revenue, benefits, and the like.  About half-way into his talk, as he was describing the company's operations, Mr. Overby said: "We do all the extraordinary rendition flights."  He made this statement with no preamble and with no indication that he thought the information was confidential or that we should not disclose it.  Then, after making his initial statement about the rendition flights, apparently thinking that only one or two of those present knew what he was referring to, Mr. Overby added that these were "the torture flights."  In making that comment, in which he specifically used the words "torture flights," Mr. Overby also said, "let's face it, some of these flights end up this way," or words very close to these.  He indicated that there were some employees who were not comfortable with that aspect of Jeppesen's business, but went on to say that "that's just the way it is, we're doing them," or words to that effect.  Overby then added that providing services for the rendition flights paid very well. He said  that the government spared no expense and did not worry about costs; what the government had to get done, it got done.

5.    After Mr. Overby made these statements, Mr. Overby indicated that two employees handled those flights, one of whom was mentioned by name.

1    6.    In discussing the rendition flights, it must be understood that Mr. Overby was

2  referring to preparing the flight plans, Air Traffic Control service charges, securing over-flight

3  permits, fuel contracting, hotels, etc.  Jeppesen was not flying or crewing the aircraft.

4    7.    During my time at Jeppesen I heard one other reference to Jeppesen's work with

5  government agencies.  As part of my training at Jeppesen, I was enrolled beginning the week of

6  July 31 in an on-site three week training class on the use of Jeppesen's trip planning software,

7  Jetplan.  In one of the classes that took place prior to the meeting with Overby referred to in

8  Paragraph 4 of this declaration, the instructor, who was the flight planner supervisor for Jeppesen,

9  said:  "We do spook flights."  I specifically asked him whether he had said "spoof" flights or

10  "spook" flights, and he replied, "spook flights."

11    8.    Shortly after the breakfast meeting, on Wednesday, August 16, 2006, I gave

12  Jeppesen notice that I wished to resign.  My last day on the job was Monday, August 21, 2006.

13    I declare under penalty of perjury that the foregoing is true and correct and that this

14  declaration was executed on October 15, 2007 at San Francisco California.

Sean Belcher