1  JEFFREY S. BUCHOLTZ
   Acting Assistant Attorney General
2  JOSEPH P. RUSSONIELLO
   United States Attorney
3  CARL J. NICHOLS
   Deputy Assistant Attorney General
4  JOSEPH H. HUNT
   Director, Federal Programs Branch
5  VINCENT M. GARVEY
   Deputy Director, Federal Programs Branch
6  MICHAEL P. ABATE
   Trial Attorney
7  michael.abate@usdoj.gov
   U.S. Department of Justice
8  Civil Division, Federal Programs Branch
   20 Massachusetts Avenue, NW
9  Washington, DC 20001
   Phone:        (202) 616-8209
10 Fax:          (202) 616-8470
   Attorneys for the United States of America

11

                UNITED STATES DISTRICT COURT
12            NORTHERN DISTRICT OF CALIFORNIA
                     San Jose Division
13

14 BINYAM MOHAMED;                          )
   ABOU ELKASSIM BRITEL;                     )
15 AHMED AGIZA;                              )
   MOHAMED FARAG AHMAD                       )
   BASHMILAH;                                )
16 BISHER AL-RAWI                            )
                                             )
17                                           )   Case No. C-07-02798-JW
              Plaintiffs,                     )
                                             )   REPLY IN SUPPORT OF MOTION TO
18            v.                              )   DISMISS, OR, IN THE ALTERNATIVE,
                                             )   FOR SUMMARY JUDGMENT BY
19                                           )   THE UNITED STATES OF AMERICA
                                             )
20 JEPPESEN DATAPLAN, INC.                    )
                                             )   Judge:        Hon. James Ware
21                                           )   Hearing Date: February 5, 2008
                                             )   Hearing Time: 1:00 PM
22            Defendant.                      )   Courtroom:    8, 4th Floor
                                             )

23

24

25

26

27

28

Reply in Support of Motion to Dismiss, or, in the Alternative,
for Summary Judgment by the United States, Case No. C-07-02798-JW

1

## TABLE OF CONTENTS

2

**PAGE**

3

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5

    I.       The United States Properly Asserted the State Secrets Privilege . . . . . . . . . . . . . . 3

6

    II.     Pleading-Stage Resolution Is Appropriate Because the Facts
          Central to the Litigation Are Subject to the State Secrets Privilege . . . . . . . . . . . 9

7

8

    III.    The Purportedly "Robust Alternatives" Suggested By Plaintiffs
          Are Insufficient to Safeguard the Privileged Information And Are
          Impractical. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

9

10

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2  **CASES**                                                                                    **PAGE(S)**

3  Afshar v. Dep't of State, 702 F.2d 1125 (D.C. Cir. 1983)................................ 7

4  Al-Haramain Islamic Foundation, Inc. v. Bush, 507 F.3d 1190 (9th Cir. 2007)......... passim

5  Bareford v. General Dynamics Corp., 973 F.2d 1138 (5th Cir. 1992)............. 2, 10, 12, 13

6  Black v. United States, 62 F.3d 1115 (8th Cir. 1995)....................... 2, 5, 10, 17

7  DTM Research, LLC v. AT & T Corp., 245 F.3d 327 (4th Cir.2001)..................... 15

8  El-Masri v. Tenet, 437 F. Supp. 2d 530 (E.D. Va. 2006). ............................. 3

9  El-Masri v. United States, 479 F.3d 296 (4th Cir. 2007)............................ passim

10 Ellsberg v. Mitchell, 709 F.2d 51 (D.C. Cir. 1983).................................... 4

11 Farnsworth Cannon, Inc. v. Grimes, 635 F.2d 268 ............................ 13, 15, 17

12 Fitzgerald v. Penthouse International, Ltd., 776 F.2d 1236 (4th Cir. 1985). ............... 17

13 Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir. 1990). ..................................... 7

14 Frugone v. CIA, 169 F.3d 772 (D.C. Cir. 1999). ....................................... 8

15 Halkin v. Helms, 598 F.2d 1 (D.C. Cir. 1978)........................................ 4

16 Hepting v. AT&T Corp., 439 F. Supp. 2d 974 (N.D. Cal. 2006). ................ 3, 6, 11, 12

17 Hunt v. CIA, 981 F.2d 1116 (9th Cir. 1992). ....................................... 16

18 Kasza v. Browner, 133 F.3d 1159 (9th Cir. 1998).................................. passim

19 Knopf v. Colby, 509 F.2d 1362 (4th Cir. 1975)..................................... 7

20 Sterling v. Tenet, 416 F.3d 338 (4th Cir. 2005).................................. passim

21 Tenenbaum v. Simonini, 372 F.3d 776 (6th Cir. 2004)........................ 2, 10, 13

22 Terkel v. AT& T Corp., 441 F. Supp. 2d 899 (N.D. Ill. 2006). ......................... 7

23 United States v. Reynolds, 345 U.S. 1 (1953).................................... passim

24 Wolf v. CIA, 473 F.3d 370 (D.C. Cir. 2007)......................................... 7

25 Zuckerbraun v. General Dynamics Corp., 935 F.2d 544 (2d Cir. 1991). ........... 2, 4, 10, 17

26

27

28

**INTRODUCTION**

Plaintiffs' Opposition to the United States' Motion to Dismiss or, in the Alternative, for Summary Judgment, concedes that the public Declaration filed by Gen. Michael V. Hayden. USAF, Director, Central Intelligence Agency ("Director"), meets all of the procedural requirements necessary for the Government to assert the state secrets privilege in this case. With this concession, plaintiffs principally argue that the privilege assertion should not be accepted because it is premature. That argument is without merit.

The state secrets privilege prevents the disclosure of information in litigation when "there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged." *United States v. Reynolds*, 345 U.S. 1, 10 (1953); *see also Kasza v. Browner*, 133 F.3d 1159, 1165 (9th Cir. 1998); *Al-Haramain Islamic Foundation, Inc. v. Bush*, 507 F.3d 1190, 1196 (9th Cir. 2007). Courts must perform a three-step analysis in any case where the United States asserts the privilege. First, the Court must determine whether the procedural requirements for invoking the privilege have been satisfied. *Reynolds*, 345 U.S. at 7-8; *Kasza*, 133 F.3d at 1165; *Al-Haramain*, 507 F.3d at 1202. Second, and without divulging the information the privilege was asserted to protect, the Court must make an independent assessment of whether the privilege is properly asserted. *Reynolds*, 345 U.S. at 8; *Kasza*, 133 F.3d at 1155-56; *Al-Haramain*, 507 F.3d at 1202. Third, if the Court concludes that the privilege has been properly asserted, the privileged information is "completely removed from the case," and the court must then decide whether, and how, the case can proceed. *Kasza*, 133 F.3d at 1166; *see also Al-Haramain*, 507 F.3d at 1202-04.

It is well-established that if the privileged information is necessary to litigate the case to completion, the Court must resolve the case at the outset so as not to "jeopardize the security which the privilege is meant to protect." *Reynolds*, 345 U.S. at 10. *See, e.g.*, *Al-Haramain*, 507 F.3d at 1205 (plaintiff could not establish standing without privileged information); *El-Masri v. United States*, 479 F.3d 296, 308-11 (4th Cir.), *cert. denied,* 128 S.Ct. 373 (2007) (pleading-stage resolution appropriate because parties could not litigate the merits of their claims and defenses without privileged information); *Sterling v. Tenet*, 416 F.3d 338, 347-48 (4th Cir. 2005), *cert. denied sub*

1    *nom. Sterling v. Goss*, 546 U.S. 1093 (2006) (same); *Tenenbaum v. Simonini*, 372 F.3d 776, 777 (6th

2    Cir. 2004) (same); *Kasza*, 133 F.3d at 1170 (same); *Black v. United States*, 62 F.3d 1115, 1119 (8th

3    Cir. 1995) (same); *Bareford v. General Dynamics Corp.*, 973 F.2d 1138, 1142-44 (5th Cir. 1992)

4    (same); *Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544, 547-48 (2d Cir. 1991) (same).

5         Plaintiffs, who contend that the Government's state secrets privilege assertion is premature

6    because "the very subject matter" of this action is not a state secret, improperly conflate the second

7    and third steps of this analysis.  Before this Court considers whether the case can proceed without

8    the privileged information, it must *first* determine whether the privilege has properly been asserted.

9    *See, e.g.*, *Al-Haramain*, 507 F.3d at 1203-04 (upholding Government's assertion of state secrets

10   privilege despite concluding that the very subject matter of the case was not a state secret).

11   Plaintiffs' strategy is to convince this Court to defer its consideration of the United States' privilege

12   assertion so that the case can proceed into discovery, at which point they believe that the privilege

13   must be asserted on an "item-by-item" basis.  But they have not cited -- and cannot cite -- a single

14   case in which a court has deferred consideration of a state secrets privilege claim until some

15   unspecified, later point in time.

16        Nor have plaintiffs even attempted to argue how this case could be litigated to completion

17   without the information over which the United States has asserted the state secrets privilege.  The

18   failure to attempt such a showing is unsurprising, because it is clear that the case cannot go forward

19   if the privilege is accepted.  The state secrets privilege will "completely remove[] from the case,"

20   *Kasza*, 133 F.3d at 1166, all of the information described in the Director's declarations, which

21   includes, but is not limited to: whether these plaintiffs were part of the CIA terrorist detention and

22   interrogation program ("CIA program"); whether defendant assisted the CIA in conducting the

23   program; whether countries named in the First Amended Complaint (specifically, Morocco and

24   Egypt) assisted with the program; and other, classified operational details of the program (such as

25   the locations where the CIA detained individuals and the interrogation methods used as part of the

26   program).  *See* Formal Claim of State Secrets and Statutory Privileges by General Michael V.

27

28

1  Hayden, USAF, Director, Central Intelligence Agency ("Public Hayden Decl.") (Dkt. no 43-2) ¶ 20.[1]

2  Plaintiffs' claims, which allege that defendant assisted the United States and foreign governments

3  in carrying out clandestine intelligence activities, cannot be litigated without this information.

4         Plaintiffs' view of the case is simply too near-sighted. Regardless of whether the "very

5  subject matter" of this litigation is a state secret, it is apparent *now* that the case cannot be litigated

6  without revealing classified details about how the United States conducts clandestine intelligence

7  activities. *See Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974, 994 (N.D. Cal. 2006) (noting that "the

8  whole object of the suit" in *El-Masri v. Tenet*, 437 F. Supp. 2d 530, 537 (E.D. Va. 2006), "was to

9  reveal classified details regarding 'the means and methods the foreign intelligence services of this

10  and other countries used to carry out the [CIA] program'" at issue in this case (citation omitted)).

11  Given the inevitable necessity to dispose of this suit, which cannot be litigated through any stage

12  without risking harm to national security -- let alone to judgment -- the Court should resolve the suit

13  at the outset without requiring further proceedings, which would only risk disclosing the very

14  information that the privilege has been asserted to protect. *See, e.g.*, *El-Masri*, 479 F.3d at 305

15  (dismissing case because the "central facts" necessary to litigate the suit "remain state secrets").

16  "Courts are not required to play with fire and chance further disclosure -- inadvertent, mistaken, or

17  even intentional -- that would defeat the very purpose for which the privilege exists." *Sterling*, 416

18  F.3d at 344; *see also Reynolds*, 345 U.S. at 10 ("[T]he court should not jeopardize the security which

19  the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge

20  alone, in chambers.").

21                         **ARGUMENT**

22  **I.    THE UNITED STATES PROPERLY ASSERTED THE STATE SECRETS PRIVILEGE**

23         The first step in determining whether the privilege has been properly asserted is to ascertain

24  that the procedural requirements for invoking the state secrets privilege have been satisfied. *Al-*

25  *Haramain*, 507 F.3d at 1202. "There must be a formal claim of privilege, lodged by the head of the

26

27       [1] The full extent of the information covered by the privilege is described in the *in camera,*
*ex parte* Declaration of Gen. Michael V. Hayden, USAF, Director, Central Intelligence Agency

28  ("Classified Hayden Decl."), which has been lodged for this Court's review. *See* Notice of Lodging
of Classified *in camera*, *ex parte* Declaration (Dkt. no 43-3).

1   department which has control over the matter, after actual personal consideration by the officer."

2   *Reynolds*, 345 U.S. at 7-8 (footnotes omitted).  Plaintiffs concede these requirements have been met.

3   *See* Memorandum of Plaintiffs in Opposition to the United States' Motion to Dismiss or, in the

4   Alternative, for Summary Judgment (Dkt. no. 50) ("Pls. Opp.") at 20 n.4.

5          Thus, this Court can proceed directly to the second step of the state secrets analysis, in which

6   it "must determine whether the circumstances before [it] counsel that the state secrets privilege is

7   applicable, without forcing a disclosure of the very thing that the privilege is designed to protect."

8   *Al-Haramain*, 507 F.3d at 1202.  The Ninth Circuit has held that "[t]he asserted claim of privilege

9   is accorded the 'utmost deference' and the court's review of the claim of privilege is narrow: the

10  court must be satisfied that under the particular circumstances of the case, 'there is a reasonable

11  danger that compulsion of the evidence will expose military matters which, in the interest of national

12  security, should not be divulged.'"  *Kasza*, 133 F.3d at 1166 (quoting *Reynolds*, 345 U.S. at 10); *see*

13  *also Sterling*, 416 F.3d at 345 ("[W]hen a judge has satisfied himself that the dangers asserted by the

14  government are substantial and real, he need not -- indeed, should not -- probe further.");

15  *Zuckerbraun*, 935 F.2d at 547 (articulating "utmost deference" standard); *Halkin v. Helms*, 598 F.2d

16  1, 9 (D.C. Cir. 1978) ("*Halkin I*") (same).  In *Al-Haramain*, 507 F.3d at 1203, the Ninth Circuit

17  recently reaffirmed "the need to defer to the Executive on matters of foreign policy and national

18  security" and found that it "surely cannot legitimately find [itself] second guessing the Executive in

19  this arena."  *See also El-Masri*, 479 F.3d at 305 ("The executive branch's expertise in predicting the

20  potential consequences of intelligence disclosures is particularly important given the sophisticated

21  nature of modern intelligence analysis . . . ."); *Halkin I*, 598 F.2d at 9 ("The courts, of course, are ill-

22  equipped to become sufficiently steeped in foreign intelligence matters to serve effectively in the

23  review of secrecy classifications in that area." (citation omitted)); *Ellsberg v. Mitchell*, 709 F.2d 51,

24  57 n.31 (D.C. Cir. 1983) ("[T]he probability that a particular disclosure will have an adverse effect

25  on national security is difficult to assess, particularly for a judge with little expertise in this area.").[2]

26

27  _____

28       [2] Plaintiffs argue that the United States' "sweeping theory" of "judicial 'deference'" has
    "been rejected in several recent 'state secrets' decisions that the government entirely ignores."  Pls.
    Opp. at 19; *see also id.* at 22 (arguing that "the deference [the government] demands for the CIA

1    Gen. Hayden's public and *in camera*, *ex parte* declarations amply demonstrate that "there is

2    a reasonable danger that compulsion of the evidence [subject to the privilege] will expose military

3    matters which, in the interest of national security, should not be divulged." *Kasza*, 133 F.3d at 1166.

4    In fact, those declarations explain in great detail how litigation concerning the operational details of

5    alleged clandestine intelligence activities reasonably could be expected to damage national security.

6    Plaintiffs do not dispute directly Gen. Hayden's assertions about the harms that would follow

7    from such disclosures. Instead, they attempt to obscure the question by pointing to (and lodging with

8    this Court) a large volume of public sources speculating about the still-classified details of the CIA

9    program, and asserting that these sources provide reason for this Court to conclude that the "very

10   subject matter" of this suit is not a state secret. *See, e.g.*, Pls. Opp. at 36.[3]    As noted above, this

11   argument improperly conflates the second and third steps of the state secrets inquiry. Determining

12   if the "very subject matter" of a case is a state secret is part of the Court's consideration of whether

13   the case can proceed *in light of* an assertion of the privilege, and is not part of the calculus in

14   determining whether the privilege itself was properly asserted. The distinction between these steps

15   is crucial; as discussed below, there are many reasons why a case may be resolved at the pleading

16   stage in response to an assertion of the state secrets privilege. A court may do so not only if "the

17   ─────────────

18   director's predictive judgments[] effectively render[s] the judicial role irrelevant"). This contention,
     which is unsupported by any citations, is mystifying; virtually every case to discuss the privilege
19   recognizes that courts must afford the "utmost deference" to the Executive Branch's assessments of
     the harms that would flow from the disclosure of particular information. In repeating that controlling
20   standard, the United States does not in any way denigrate the important function that this Court
     performs when deciding whether the privilege is properly invoked. On the contrary, and out of
21   respect for this Court's function, Gen. Hayden's classified declaration provides the Court with a
22   detailed account of the scope of information subject to the privilege and the harms that would  result
     from its disclosure -- as is the United States' standard practice in state secrets litigation. *See, e.g.*,
23   *Al-Haramain*, 507 F.3d at 1203 (government's privilege assertion was "exceptionally well
24   documented"); *Kasza*, 133 F.3d at 1169 (submission of classified declarations for *in camera, ex*
     *parte* review is "unexceptional" in state secrets cases).

25

26   [3]  Plaintiffs devote more than ten pages of their opposition to arguing that *Al-Haramain*
     requires this Court to reject *El-Masri* and hold that the "very subject matter" of this case -- which
27   concerns the same CIA program -- is not a state secret. *See* Pls. Opp. at 25-36.  That argument
     ignores the plain language of *Al-Haramain*, which notes that "[i]ndeed, in [*El-Masri*], the facts may
28   have counseled for such an approach." *Al-Haramain*, 507 F.3d at 1201.

1    very subject matter" of the litigation is a state secret, but also if the parties cannot litigate their claims

2    and defenses without the privileged information.  *Al-Haramain* perfectly illustrates this point.  Even

3    though the "very subject matter" of that suit was not a state secret, the Court considered *and*

4    *accepted* the "exceptionally well documented" state secrets privilege assertion at the outset, and as

5    a result concluded that the plaintiffs' inability to establish standing without the privileged

6    information required dismissal.  *Al-Haramain*, 507 F.3d at 1203, 1205.

7        Moreover, these public sources do not *declassify* the specific operational details of the CIA

8    program that would be necessary to litigate this case, or otherwise negate Gen. Hayden's claim that

9    those details constitute state secrets.  It is simply not true, as plaintiffs imply, that the existence of

10   documents publicly discussing the program, and in some cases advancing specific allegations

11   concerning these plaintiffs, is sufficient to defeat the Government's claim that the case concerns state

12   secrets.  Remarkably, plaintiffs go so far as to suggest, relying on *Hepting*, 439 F. Supp. 2d at 990,

13   that a matter cannot be a state secret if a public document with "substantial indicia of reliability"

14   discusses that topic.  Pls. Opp. at 25.  But no case they cite -- not even *Hepting* -- supports that

15   incorrect statement of the law.  *See Hepting*, 439 F. Supp. 2d at 990 ("[S]imply because such

16   statements have been publicly made does not mean that the truth of those statements is a matter of

17   general public knowledge and that verification of the statement is harmless."); *El-Masri*, 479 F.3d

18   at 308-09 ("[A]dvancing a case in the court of public opinion, against the United States at large, is

19   an undertaking quite different from prevailing against specific defendants in a court of law.").[4]

20       On the contrary, it is well-established that information regarding classified intelligence

21   activities remains classified unless and until that specific information is declassified by the United

22   _____

23       [4] Plaintiffs misread *Hepting*.  That case did not say that speculation about classified activities
     contained in documents with "substantial indicia of reliability" -- however that phrase is defined --
24   opens those activities for examination in a public trial.  Rather, *Hepting* used that language in a
     limiting fashion; it stated that only documents bearing a sufficient imprimatur of *official* disclosure
25   could render the matter no longer a secret.  *See Hepting*, 439 F. Supp. 2d at 990 ("Accordingly, in
     determining whether a factual statement is a secret, the court considers only public admissions or
26   denials by the government, AT&T and other telecommunications companies, which are the parties
     indisputably situated to disclose whether and to what extent the alleged programs exist.").  The Court
27   thus *refused* to consider the declaration of a former AT&T employee who alleged first-hand
     knowledge of particular information.  *Id.*
28

1  States.  *See Knopf v. Colby*, 509 F.2d 1362, 1370 (4th Cir. 1975) (classified information is not

2  considered to be "in the public domain *unless there had been official disclosure of it*" (emphasis

3  added)).  Official disclosure requires far more than public speculation; for an official disclosure to

4  be found, (1) the information alleged to be in the public domain must be as specific as the

5  information that has been officially disclosed; (2) the disputed information must exactly match the

6  information publicly disclosed, *e.g.*, it must involve the same time period or same operation; and (3)

7  the information must have been publicly released through "an official and documented disclosure."

8  *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) (citing *Afshar v. Dep't of State*, 702 F.2d

9  1125, 1133 (D.C. Cir. 1983)).  "An agency's official acknowledgment of information by prior

10 disclosure . . . cannot be based on mere public speculation, *no matter how widespread*."  *Wolf v. CIA*,

11 473 F.3d 370, 378 (D.C. Cir. 2007) (citing *Afshar*, 702 F.2d at 1130) (emphasis added).[5]

12      Plaintiffs argue that these official disclosure cases are "inapposite[]" because they arose in

13 the context of Freedom of Information Act ("FOIA") litigation, or in cases involving prepublication

14 review of manuscripts written by former intelligence officers.  *See* Pls. Opp. at 26 n.12.  This

15 contention could not be more wrong; these cases precisely support the Government's argument and

16 are *essential* to the state secrets privilege analysis because they demonstrate that the information

17 necessary to litigate this case has not been officially disclosed and therefore remains properly

18 classified.  Plaintiffs' argument that the official disclosure doctrine "do[es] not empower the

19 government to intervene in cases and remove what is already in the public domain from the court's

20 consideration" misses the point entirely.  *Id.*  The Government has not attempted to prevent plaintiffs

21 from making the allegations in their Complaint.  But, as noted below, it can -- and must -- intervene

22 to prevent the parties from *litigating* the veracity of those allegations when such litigation would

23 divulge state secrets.  That litigation process would transform speculation into official findings of

24

25  _____

26  [5] Similarly, media reports and reports of other governments cannot declassify information
that belongs to the United States.  *See, e.g.*, *El-Masri*, 479 F.3d at 311 n.5 (declining to endorse
27  plaintiff's theory that information is ineligible for protection under the state secrets privilege simply
because it has been published in the news media); *Terkel v. AT&T Corp.*, 441 F. Supp. 2d 899, 913-
28  14 (N.D. Ill. 2006) (rejecting contention that media reports about NSA surveillance program render
state secrets privilege inapplicable).

1   fact, and would necessarily expose aspects of the Government's clandestine intelligence operations

2   that should not be exposed. *See El-Masri*, 479 F.3d at 308 ("The controlling inquiry is not whether

3   the general subject matter of an action can be described without resort to state secrets. Rather, we

4   must ascertain whether an action can be *litigated* without threatening the disclosure of such state

5   secrets."). Put differently, "what is in the public domain" is not the *truth* of the matter asserted, but

6   merely the *assertions* themselves. The distinction between the two, which plaintiffs ignore, is the

7   heart of this case.

8          Finally, in their attempt to argue that the "very subject matter" of the case is not a state secret,

9   plaintiffs also point to statements about the CIA program made by United States officials, including

10  the President, Gen. Hayden, Secretary of State Rice, and other former CIA officials. *See* Pls. Opp.

11  at 29-33. Based on these statements, plaintiffs compile a list of purportedly "crucial details" about

12  the program that, they claim, may be derived from official sources. *See* Pls. Opp. at 33.[6] In fact,

13  those purportedly "crucial" details, the public discussion of which was previously addressed in Gen.

14  Hayden's Public Declaration, *see* ¶¶ 12-19, fall far short of the still-classified details that actually

15  are needed to litigate this case to completion. Plaintiffs' list includes only the most general facts

16  about the program, such as its existence, the fact that the CIA sometimes cooperates with other

17  countries in carrying out such activities, the general numbers of individuals detained as part of the

18  program, an acknowledgment that the CIA abides by the law in conducting the program and that its

19  interrogators are adequately trained, and the specific identities of some individuals detained in the

20  program that the United States intends to bring to trial (none of whom are plaintiffs in this action).

21  The list does *not* include the specific details over which Gen. Hayden has asserted the state secrets

22  privilege -- and that, as described *infra*, are necessary to litigate this case -- namely, certain

23  information that may tend to confirm or deny cooperation with any specific private entity or foreign

24  _____

25     [6] Plaintiffs imply that comments made by then-former CIA Director George Tenet on a
    televised interview, and in Congressional hearings, constitute an official disclosure of information.
26  *See* Pls. Opp. at 31, 33 n.15. That is incorrect. *See Frugone v. CIA*, 169 F.3d 772, 774 (D.C. Cir.
    1999) (stating that "we do not deem 'official' a disclosure made by someone other than the agency
27  from which the information is being sought," and collecting authorities for, *inter alia*, the
    propositions that "information reported in book by former CIA official" and "information . . . already
28  reported in congressional committee report" has not been officially disclosed).

government concerning clandestine intelligence activities; specific information about the CIA's terrorist detention and interrogation program, such as the locations where detainees are held, the interrogation methods used in the program, and the identities of any individuals detained by the CIA that have not already been publicly acknowledged; and certain other information concerning CIA clandestine intelligence activities that would tend to reveal any intelligence activities, sources, or methods. *See* Public Hayden Decl. ¶ 20[7]; *See also El-Masri*, 479 F.3d at 311 ("[T]he public information does not include the facts that are central to litigating his action. Rather, those central facts -- the CIA means and methods that form the subject matter of El-Masri's claim -- remain state secrets." (footnote omitted)).

## II.    PLEADING-STAGE RESOLUTION IS APPROPRIATE BECAUSE THE FACTS CENTRAL TO THE LITIGATION ARE SUBJECT TO THE STATE SECRETS PRIVILEGE

If this Court accepts the United States' assertion of the state secrets privilege, as it should, it "must next resolve how the litigation should proceed in light of the government's successful privilege claim." *Al-Haramain*, 507 F.3d at 1204 (citing *El-Masri*, 479 F.3d at 304). Plaintiffs erroneously contend that "*only where* 'the very subject matter' of a suit is a state secret . . . is dismissal at the pleading stage permissible." Pls. Opp. at 2 (emphasis added). If "the very subject matter" of the case is not a state secret, plaintiffs argue, further proceedings are required before a state secrets privilege assertion may be considered, and the privilege may only be asserted "on an item-by-item basis during discovery." *Id.* at 27, 36. This is not the law.

Courts have long recognized that pleading-stage resolution of a suit is appropriate and necessary where the state secrets privilege renders it impossible for the case to be litigated to completion. This inability to fully litigate the case may stem from the fact that the "very subject matter" of a suit is a state secret. But it also may owe to any other circumstance where the privilege prevents the parties from litigating the merits of their claims by, for example, depriving them of the ability to establish, or rebut, a *prima facie* case. The Court of Appeals recently reaffirmed this exact point:

---

[7] Gen. Hayden's classified *in camera*, *ex parte* declaration contains additional information, which cannot be discussed on the public record, that is essential for this case to proceed. *See, e.g.*, Classified Hayden Decl. ¶¶ 3-9, 21-31, 51-53, 71-73.

1  
2  
3  

> To be sure, a bright line does not always separate the subject matter of the lawsuit from the information necessary to establish a prima facie case. In some cases, there may be no dividing line. *In other cases, the suit itself may not be barred because of its subject matter and yet ultimately, the state secrets privilege may nonetheless preclude the case from proceeding to the merits.*

4  *Al-Haramain*, 507 F.3d at 1201 (emphasis added)). *See also Tenenbaum*, 372 F.3d at 777 (affirming

5  dismissal because "Defendants cannot defend their conduct . . . without revealing the privileged

6  information"); *Kasza*, 133 F.3d at 1166 ("If, after further proceedings, the plaintiff cannot prove the

7  *prima facie* elements of her claim with nonprivileged evidence, then the court may dismiss her claim

8  . . . . Alternatively, 'if the privilege deprives the *defendant* of information that would otherwise give

9  the defendant a valid defense to the claim, then the court may grant summary judgment to the

10  defendant.'" (*quoting Bareford*, 973 F.2d at 1141)); *Black*, 62 F.3d at 1118 (case properly dismissed

11  because "[t]he protected information precludes Black from establishing a *prima facie* Bivens claim

12  and . . . continued litigation carries with it the risk that privileged information might be disclosed");

13  *Zuckerbraun*, 935 F.2d at 547 (pleading-stage dismissal appropriate because the dispositive legal

14  questions "cannot be resolved or even put in dispute without access to" information that is "in its

15  entirety classified and subject to the claim of privilege").

16      Plaintiffs' contrary contention -- that dismissal at the pleading stage is appropriate only where

17  the "very subject matter" is a state secret -- is based on a plainly untenable reading of *Kasza*.

18  Plaintiffs contend that case's passing use of the phrase "after further proceedings" affirmatively

19  *forbids* a court from examining at the outset whether the information subject to the state secrets

20  privilege would inevitably prevent the parties from proving their claims or defenses. *See* Pls. Opp.

21  at 37 (emphasizing phrase). Instead, plaintiffs assert that courts must charge ahead until some future,

22  as-yet-unidentified point at which it would become appropriate to reconsider the United States'

23  privilege assertion. Plaintiffs have not cited -- and cannot cite -- a single case where a court has

24  deferred consideration of a state secrets privilege in this manner.[8]  Indeed, that approach would be

25  

26      [8] To be sure, plaintiffs do cite some of the many cases in which the state secrets privilege is
27  asserted without seeking dismissal of the action. *See* Pls. Opp. at 23 & n.8. But, as explained in
28  text, this is not such a case; without the information subject to the privilege, the parties cannot
litigate the essential elements of their claims and defenses. Indeed, if anything, those cases undercut
plaintiffs' argument because they demonstrate that the United States does not view the state secrets

1    at odds with the Ninth Circuit's most recent state secrets opinion. *See Al-Haramain*, 507 F.3d at

2    1203 (accepting privilege assertion even though the "very subject matter" of the suit was not a state

3    secret).

4         Crucially, plaintiffs do not explain how their claims could be litigated to completion without

5    privileged information. At a minimum, plaintiffs must prove that "agents of the United States,

6    Morocco, and Egypt" subjected them to "forced disappearance" and "torture and other cruel,

7    inhuman, or degrading treatment." First Amended Compl. ¶¶ 253, 260-61. Plaintiffs also must

8    prove defendant Jeppesen's purported connection to those activities. *See id.* ¶¶ 236-52, 254-59, 262-

9    66. These allegations cannot be proven without probing the very issues covered by the Director's

10   state secrets privilege assertion, such as: whether these specific plaintiffs were detained as part of

11   the CIA's terrorist detention and interrogation program; whether the CIA cooperated with, *inter alia*,

12   Morocco and Egypt in conducting that program; where the CIA detained individuals as part of this

13   program; whether plaintiffs were subjected to specific detention practices and methods of

14   interrogation; and whether defendant or any other private organization assisted the CIA in

15   conducting the program. Disclosure of this information reasonably could be expected to harm

16   national security. *See* Public Hayden Decl. ¶¶ 21-25; Classified Hayden Decl. ¶¶ 32-50, 54-70, 74.

17        Instead of explaining how the case could be litigated to completion without this privileged

18   information, plaintiffs simply assert that it would be too "hypothetical" at this point to determine

19   what information is necessary to litigate this lawsuit. *See* Pls. Opp. at 37-38 & n.19.[9] That is just

20    

21   privilege as an "immunity" doctrine, *contra* Pls. Opp. at 19-23, but instead carefully evaluates in

22   each case whether the privilege requires the government to also seek dismissal of the litigation.

23       [9] Plaintiffs also contend, citing *Hepting*, that discovery is required before the Court can

24   determine "the effect of the privilege" in this case. Pls. Opp. at 42 & n.23. The holding of that case
     is inapposite to allegations like those in the present case, as *Hepting* itself recognized. In *Hepting*,

25   the court found that the case "focuses only on whether AT&T intercepted and disclosed
     communications or communication records to the government," *Hepting*, 439 F. Supp. 2d at 994,

26   and permitted limited discovery concerning those issues. The court specifically distinguished those
     facts from *El-Masri*, where -- as in this case -- "the whole object of the suit was to reveal classified

27   details regarding 'the means and methods the foreign intelligence services of this and other countries

28   used to carry out the program.'" *Id.* (citation omitted). No comparable, limited discovery could be
     devised in such circumstances. *See id.* at 985 (quoting *El-Masri*'s holding that "special discovery

1  wrong.  To be sure, plaintiffs have no knowledge of the full extent of the information covered by the

2  privilege, and thus cannot truly know whether the United States' contentions about the suit are

3  hypothetical.  But Gen. Hayden's *public* assertion of the state secrets privilege, standing alone, shows

4  that plaintiffs' contention is incorrect; there is no hypothesizing required to see that the information

5  covered by the privilege goes to the heart of plaintiffs' claims.  *Compare* Public Hayden Decl. ¶ 20

6  (describing privileged information) *with* First Amended Compl. ¶¶ 253, 260-61 (setting forth

7  plaintiffs' core allegations).[10]

8          The privilege, therefore, renders the parties unable to litigate this case to completion.  First,

9  and notwithstanding the large volume of documents that plaintiffs presented to this Court in

10 opposition to the United States' dispositive motion, it is clear that plaintiffs cannot make out a *prima*

11 *facie* case in support of their claims.  This exact issue was addressed by the Fifth Circuit in *Bareford*,

12 973 F.2d at 1141, where the plaintiffs presented some "2,500 pages of affidavits and documents, all

13 assertedly in the public domain," including "an affidavit of the former captain of the U.S.S. Stark,

14 two affidavits from former employees of General Dynamics, and information contained in

15 Congressional reports and other published sources."  Despite these documents, the Court properly

16 concluded that the state secrets privilege prevented the plaintiffs from making out a *prima facie* case,

17 which required more than "substantial evidence from which a judge or jury might find problems, or

18 even wrongdoing, by" the defendant; instead, a *prima facie* case required "proof of what the Phalanx

19 system was intended to do and the ways in which it fails to accomplish these goals." *Id.* at 1142.

20 Because the facts plaintiffs needed to *prove* were removed from the case by the state secrets

21 privilege, plaintiffs could not make out a *prima facie* case, and the litigation could not proceed.  *Id.*

22          Moreover, even if plaintiffs' evidence might suffice to establish a *prima facie* claim, that

23

24 procedures would have been 'plainly ineffective where . . . the entire aim of the suit [was] to prove

25 the existence of state secrets'").

26          [10] *Kasza*, in fact, strongly undercuts plaintiffs' claim that dismissal at the pleading stage is
   necessarily hypothetical unless it can be determined that "the very subject matter" of the case is a

27 state secret.  In that case, the Ninth Circuit unequivocally held, at the outset, that the Government's
   assertion of the state secrets privilege "bar[s] [plaintiff] from establishing her *prima facie* case on

28 any of her eleven claims."  *Kasza*, 133 F.3d at 1170.

1   does not mean that this case can actually be *litigated* to completion.  Once the privilege is properly

2   invoked, no party to the litigation may use the information covered by that privilege assertion.  It is

3   clear now that the privilege would prevent defendant from meaningfully challenging plaintiffs'

4   allegations.  For example, defendant would be forbidden to discuss whether or not it cooperated with

5   the CIA as alleged in the Complaint, and would be unable to identify -- let alone call -- witnesses

6   with firsthand knowledge of the program's operations to contest or rebut plaintiffs' allegations.  *See*

7   *El-Masri*, 479 F.3d at 310 (defending against plaintiff's claims "would require the production of

8   witnesses whose identities are confidential and evidence the very existence of which is a state

9   secret").  This inability to mount a defense, in and of itself, is a sufficient basis for disposing of the

10  case.  *See, e.g.*, *Tenenbaum*, 372 F.3d at 777 (affirming pleading-stage dismissal of suit because

11  "Defendants cannot defend their conduct . . . without revealing the privileged information"); *see also*

12  *Kasza*, 133 F.3d at 1166 ("'[I]f the privilege deprives the defendant of information that would

13  otherwise give the defendant a valid defense to the claim, then the court may grant summary

14  judgment to the defendant.'" (*quoting Bareford*, 973 F.2d at 1141)).

15      At bottom -- and regardless of whether the "very subject matter" of this case can be classified

16  as a state secret, or whether the parties can meet the threshold evidentiary standards for establishing

17  a *prima facie* case or defense -- the relevant question is whether this case can be litigated to

18  completion, and it is apparent *now* that it cannot.  *See, e.g.*, *Bareford*, 973 F.2d at 1143 ("Even if we

19  found that Bareford had made out a prima facie case with unprivileged information, we conclude that

20  the state secret doctrine would nonetheless bar the plaintiffs' action because any further attempt by

21  the plaintiffs to establish a prima facie case would threaten disclosure of important state secrets."

22  (citing *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 281 (4th Cir. 1980) (en banc)).  In this

23  regard, the case is identical to *El-Masri*, where the court correctly focused on the crucial distinction

24  between offering material in support of one's claims, and actually *proving* the truth of such

25  allegations.[11]

26

27      [11] *Al-Haramain* is not to the contrary.  Although that case criticized the Fourth Circuit's

28  analysis of when "the very subject matter" of a case constitutes a state secret, it never took issue with
    *El-Masri*'s holding that the parties could not litigate their claims and defenses without privileged

1    Notwithstanding El-Masri's ability to tell his version of the events surrounding his alleged

2    detention and interrogation, the Fourth Circuit found that he could not be permitted to litigate those

3    assertions because "advancing a case in the court of public opinion, against the United States at

4    large, is an undertaking quite different from prevailing against specific defendants in a court of law."

5    *El-Masri*, 479 F.3d at 308-09. To prevail, that plaintiff "would be obliged to produce admissible

6    evidence not only that he was detained and interrogated, but that the defendants were involved in his

7    detention and interrogation in a manner that renders them personally liable to him." *Id.* at 309. That

8    showing, in turn, "could be made only with evidence that exposes how the CIA organizes, staffs, and

9    supervises its most sensitive intelligence operations." *Id.* Moreover, as with defendant Jeppesen,

10   the Court in *El-Masri* noted that "[w]ith respect to the defendant corporations and their unnamed

11   employees, El-Masri would have to demonstrate the existence and details of CIA espionage

12   contracts, an endeavor practically indistinguishable from that categorically barred by *Totten* and

13   *Tenet v. Doe*." *Id.* Summing up, the Court noted that "[e]ven marshalling the evidence necessary

14   to make the requisite showings would implicate privileged state secrets, because El-Masri would

15   need to rely on witnesses whose identities, and evidence the very existence of which, must remain

16   confidential in the interest of national security." *Id.*; *see also id.* at 311 (noting that in *Sterling*, 416

17   F.3d at 341, although plaintiff's "allegations could be stated with no detrimental effect on national

18   security," the case could not proceed "because a judicial resolution of the matter would have required

19   disclosure of how the CIA makes sensitive personnel decisions, and would have involved the

20   production of witnesses whose very participation in a court proceeding would risk exposing

21   privileged information").

22   The same analysis applies in this case. For plaintiffs to succeed on their claims, they would

23   have to *prove* that they were, in fact, part of the CIA program; that the governments of, *inter alia*,

24   Morocco and Egypt were involved in their detention and interrogation; that they were mistreated by

25   agents of those countries and the United States; and that defendant Jeppesen was connected to these

26   _____

27   information. The Ninth Circuit never reached that issue because, after upholding the government's
     privilege assertion, it found that the plaintiff was unable to establish the threshold showing required

28   for Article III standing, and thus had no reason to examine whether the parties could ultimately prove
     the elements of their claims and defenses. *See Al-Haramain*, 507 F.3d at 1205.

1  activities. Attempting to prove such allegations would inevitably expose state secrets covered by

2  the Director's privilege assertion. *See* Public Hayden Decl. ¶¶ 20-26; Classified Hayden Decl. ¶¶

3  75-87, 94; *see also Farnsworth Cannon, Inc.*, 635 F.2d at 281 ("In an attempt to make out a prima

4  facie case during an actual trial, the plaintiff and its lawyers would have every incentive to probe as

5  close to the core secrets as the trial judge would permit. Such probing in open court would inevitably

6  be revealing. It is evident that any attempt on the part of the plaintiff to establish a prima facie case

7  would so threaten disclosure of state secrets that the overriding interest of the United States and the

8  preservation of its state secrets precludes any further attempt to pursue this litigation.").

9        Put simply, this Court must take the long view. Where, as here, the Court can determine at

10  the outset that the case cannot proceed to completion, the Court should not postpone the inevitable,

11  and the litigation should proceed no further. *See Sterling*, 416 F.3d at 348 ("[W]here 'the very

12  question on which a case turns is itself a state secret, or the circumstances make clear that sensitive

13  military secrets will be so central to the subject matter of the litigation that any attempt to proceed

14  will threaten disclosure of the privileged matters,' dismissal is the proper remedy." (quoting *DTM*

15  *Research, LLC v. AT & T Corp.*, 245 F.3d 327, 334 (4th Cir.2001)). This Court should not

16  "jeopardize the security which the privilege is meant to protect," *Reynolds*, 345 U.S. at 10, by

17  continuing with litigation in which plaintiffs can never prevail. "Courts are not required to play with

18  fire and chance further disclosure -- inadvertent, mistaken, or even intentional -- that would defeat

19  the very purpose for which the privilege exists." *Sterling*, 416 F.3d at 344.[12]

20  **III.   THE PURPORTEDLY "ROBUST ALTERNATIVES" SUGGESTED BY PLAINTIFFS ARE**
**INSUFFICIENT TO SAFEGUARD THE PRIVILEGED INFORMATION AND ARE**
21  **IMPRACTICAL**

22        In lieu of dismissing the suit, plaintiffs suggest that this Court "instead require the

23  government to assert the privilege on an item-by-item basis during discovery." Pls. Opp. at 36. It

24  _____

25      [12] Plaintiffs' arguments concerning the statutory privileges under National Security Act suffer
from the same flaws as their state secrets privilege arguments. The United States does not contend
26  that either privilege constitutes an "immunity" doctrine. *Contra* Pls. Opp. at 19-23, 50-51. Instead,
the United States contends that, like the state secrets privilege, this statutory privilege provides a
27  basis for removing specific information from this case. It is the effect of removing that information
-- *i.e.*, the parties' inability to litigate the suit -- that prevents the litigation from proceeding, and not
28  the assertion of the privilege *per se.*

1    is not clear exactly what more plaintiffs wish Gen. Hayden to do; his declarations *do* demonstrate

2    with specificity why disclosure of the specific information over which he asserted the privilege

3    reasonably could be expected to harm national security.  In a case like this, the avowed purpose of

4    which is to probe the details of alleged intelligence operations, nothing more is required.  As the

5    Court of Appeals recognized, once the responsible Department head "has properly invoked the claim

6    of privilege and adequately identified categories of privileged information," that officer "cannot

7    reasonably be expected personally to explain why each item of information arguably responsive to

8    a discovery request affects the national interest."  *Kasza*, 133 F.3d at 1169.

9          Plaintiffs' proposal would turn the Director of the CIA and the Director of National

10    Intelligence (who bear statutory responsibilities to safeguard information regarding clandestine

11    intelligence activities, *see* Public Hayden Decl. ¶¶ 5-6) into special masters of this litigation.  These

12    individuals would have to personally review each and every pleading submitted, every discovery

13    request propounded (along with the answers thereto), and every deposition question asked (and the

14    responses provided) to ensure that no classified information is improperly disclosed.  And every time

15    a privilege assertion is deemed necessary -- as it often would be, given the nature of the allegations

16    in this case -- the DCIA and/or DNI would be required to assert the state secrets privilege over each

17    item.  As this Court has seen, that process requires personal consideration of the matter by the

18    department head, a formal assertion of the privilege, and, inevitably, briefing from the parties

19    followed by a decision from this Court.  The burden that such a regime would place upon this Court

20    and the Executive Branch cannot be overstated, and is inconsistent with the numerous cases in which

21    courts have accepted assertions of the state secrets privilege at the outset of the litigation.  *See, e.g.*,

22    *supra* at 1-2 (collecting cases).  Moreover, this process itself could harm national security, because

23    the mere act of asserting the state secrets privilege over some specific information sought in

24    discovery, and not other information, could reveal information about whether and how the United

25    States conducts intelligence-gathering activities.  *Cf. Hunt v. CIA*, 981 F.2d 1116 (9th Cir. 1992)

26    (affirming "Glomar" doctrine, under which the CIA can refuse to confirm or deny an allegation when

27    such confirmation or denial itself would reveal privileged information).

28          Alternatively, plaintiffs suggest some sort of *in camera* proceeding or other process involving

1   a special master. *See* Pls. Opp. at 49-50. The Fourth Circuit correctly, and summarily, disposed of

2   such a contention in *El-Masri*, noting that the argument was "expressly foreclosed by *Reynolds*, the

3   Supreme Court decision that controls this entire field of inquiry." *El-Masri*, 479 F.3d at 311.

4   "*Reynolds* plainly held that when 'the occasion for the privilege is appropriate, . . . the court should

5   not jeopardize the security which the privilege is meant to protect by insisting upon an examination

6   of the evidence, *even by the judge alone, in chambers*.'" *Id.* (emphasis added and citation omitted);

7   *see also Zuckerbraun*, 935 F.2d at 548 (rejecting argument that discovery and *in camera* proceedings

8   were required in lieu of dismissal).[13]  *A fortiori*, then, this Court should not order that plaintiffs,

9   defendant, or some third party be given access to the information. *Cf. Farnsworth Cannon, Inc.*, 635

10  F.2d at 281(noting counsel's "incentive to probe as close to the core secrets as the trial judge would

11  permit" in order to make out a prima facie case).

12          Finally, it must be noted that the information over which the United States has asserted the

13  state secrets privilege -- much of which cannot be described on the public record -- permeates every

14  aspect of this case. Any further steps in litigation, including responsive pleadings or even limited

15  discovery, would risk disclosing that which, in the interests of national security, cannot be disclosed.

16  *See* Public Hayden Decl. ¶ 26 ("I have determined that the highly classified information over which

17  I am asserting these privileges is central to the allegations and issues in this case such that any further

18  litigation of this case would pose an unacceptable risk of disclosure of information that the nation's

19  security requires not be disclosed."); Classified Hayden Decl. ¶¶ 75-87, 94. Because, as the Court

20  can plainly see from those declarations, "no amount of effort and care on the part of the court and

21  the parties will safeguard" this material, *Fitzgerald v. Penthouse Intern., Ltd.*, 776 F.2d 1236, 1243

22  (4th Cir. 1985), the case must be dismissed at the outset. *See also Black*, 62 F.3d at 1119 ("The

23

24          [13] Similarly, plaintiffs call for this Court to exercise creativity in allowing the parties to
25  litigate around the government's assertion of the state secrets privilege. *See* Pls. Opp. at 48. This
    suggestion is inconsistent with *Al-Haramain*. There, the district court upheld an assertion of the
26  state secrets privilege over a document that the plaintiffs had inadvertently seen, but allowed the
    plaintiffs to proceed by attesting to their knowledge of its contents (without requiring the document's
27  actual production). The Court of Appeals reversed, finding the approach "contrary to established
    Supreme Court precedent," which requires the privileged information to be completely removed
28  from the case. *Al-Haramain*, 507 F.3d at1204.

1  information covered by the privilege is at the core of Black's claims, and we are satisfied that the

2  litigation cannot be tailored to accommodate the loss of the privileged information.").

3                                                   **CONCLUSION**

4          For all the foregoing reasons, the United States respectfully requests that this Court grant

5  its Motion and dismiss this action without further proceedings.

6

7  Dated: <u>January 18, 2008</u>                          Respectfully submitted,

8                                                   JEFFREY S. BUCHOLTZ
                                                    Acting Assistant Attorney General
9
                                                    JOSEPH P. RUSSONIELLO
10                                                  United States Attorney

11                                                  CARL J. NICHOLS
                                                    Deputy Assistant Attorney General
12
                                                    JOSEPH H. HUNT
13                                                  Director, Federal Programs Branch

14                                                  VINCENT M. GARVEY
                                                    Deputy Director, Federal Programs Branch
15
                                                    <u>*/s/ Michael P. Abate*</u>
16                                                  MICHAEL P. ABATE
                                                    (IL. Bar No. 6285597)
17                                                  Trial Attorney
                                                    michael.abate@usdoj.gov
18                                                  U.S. Department of Justice
                                                    Civil Division, Federal Programs Branch
19                                                  20 Massachusetts Avenue, NW
                                                    Washington, DC 20001
20                                                  Phone:       (202) 616-8209
                                                    Fax:         (202) 616-8470
21
                                                    *Attorneys for the United States of America*
22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

I hereby certify that the foregoing REPLY IN SUPPORT OF MOTION TO DISMISS

3

OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT will be served by means of the

4

Court's CM/ECF system, which will send notifications of such filing to the following:

5

6

American Civil Liberties Union
Foundation of Northern California Inc.
Ann Brick

7

39 Drumm Street
San Francisco, CA 94111

8

American Civil Liberties Union

9

Jameel Jaffer
Steven R Shapiro

10

Steven M. Watt
Benjamin Elihu Wizner

11

125 Broad Street
18th Floor

12

New York, NY 10004

13

International Human Rights Clinic
Washington Square Legal Services, Inc

14

Margaret L. Satterthwaite
NYU School of Law

15

245 Sullivan Street
New York, NY 10012

16

17

Joseph Scott Klapach
Attorney at Law
355 S. Grand Ave., #3500

18

Los Angeles, CA 90071-1560

19

Munger Tolles & Olson
Daniel Paul Collins

20

Henry Weissman
355 So Grand Ave Ste 3500

21

Los Angeles, CA 90071-1560

22

National Litigation Project-Allard K. Lowenstein
International Human Rights Clinic

23

Hope R Metcalf
Yale Law School

24

127 Wall Street
New Haven, CT 06520

25

Reprieve

26

Zachary Philip Katznelson
Clive Stafford Smith

27

PO Box 52742
London, England, UK EC4P 4WS

28

/s/ Michael P. Abate

Reply in Support of Motion to Dismiss, or, in the Alternative,
for Summary Judgment by the United States, Case No. C-07-02798-JW